### J. B. Fine v. The State.

No. 16340.   Delivered December 20, 1933.
Rehearing Denied February 14, 1934.
Reported in 68 S. W. (2d) 192.

338

The opinion states the case.

*Otis Rogers* and *Joe Spurlock*, both of Fort Worth, for appellant.

*Jesse E. Martin*, Dist. Atty., and *H. C. Wade* and *Cal Estill*, Asst. Dist. Attys., all of Fort Worth, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is arson; the punishment, confinement in the penitentiary for two years.

At midnight officers saw appellant enter a garage belonging to C. E. Wiggins. When he came out of the garage at three o'clock in the morning appellant was arrested and taken immediately across the street to a fire alarm box and the alarm turned in. At this juncture, a fire broke out in the garage. After the fire was extinguished, an examination disclosed that there had been some gasoline spilled or scattered over a room in the house and that an electric iron attached to a socket and sitting on a sofa pillow on the floor was still hot. It was the theory of the state that appellant had set this electric iron and had wilfully scattered gasoline thereabout and had turned the iron on when leaving the house, for the purpose of deliberately

setting the house on fire. The officers testified that they saw no other person in the house, and that appellant was the only person they saw leave it. They further testified that the walls, door and floor of the house were damaged by the fire.

Appellant did not testify in his own behalf. Witnesses for appellant testified that the fire was never actually communicated to the house, but that the walls and paper thereof were merely scorched and smoked. Mrs. Ruth Burns, appellant's witness, testified that at the hour of midnight, and prior to the arrival of appellant, after having sat up until that hour with her father, she went into the garage, for the purpose of cleaning and pressing some clothing. She further testified that after she had been there some little time appellant came in and she and appellant drank several bottles of beer. They sat and talked for some little time, and appellant suggested that it was time for him to go. She told appellant to sit a few moments while her electric iron was heating, and they would drink another bottle of beer, and by the time they had done that the iron would be hot enough to do her pressing immediately after his departure. This appellant consented to do. Again, she testified that she had taken some gasoline into the apartment for the purpose of cleaning her clothing and that immediately after appellant's departure she heard a commotion at the foot of the stairway which led her to conclude that appellant was being arrested, and she saw him walk away from the house in company with another man. She immediately left the apartment and ran across the courtyard to the apartment occupied by her father, who was ill, for the purpose of notifying him of what had taken place, and while she was in her father's apartment the fire broke out. She further testified that she was present in the apartment where the fire broke out during the entire time appellant was there, and that appellant did not scatter any gasoline, turn on the iron, or do any other thing to set fire to the house.

The charge of the court included in the original transcript contains no affirmative instruction to acquit appellant if the jury entertained a reasonable doubt as to whether the fire was communicated to the house. As shown in bill of exception No. 1, the omission was excepted to. It is certified in the bill that the court overruled the exceptions "in whole and in part and declined to amend his charge in any particular." Notice of appeal was entered on the 20th day of April, 1933, and the original transcript filed in this court on the 23rd day of August, 1933. On the 2nd day of November, 1933, the district attorney filed in the trial court his motion to supplement the transcript and substitute "a portion of the charge or the special

charge which has been lost, misplaced or destroyed." The charge alleged to have been lost was set forth in the motion as follows: "Gentlemen of the Jury you are charged as follows: That if you have a reasonable doubt as to whether or not the fire was communicated to the building and you find and believe from the evidence that the wall paper was burned or the building only scorched, you will acquit the defendant and say by your verdict 'not guilty.' "

The trial court heard evidence on the motion. On his direct-examination by the state the juror Francis testified that he remembered a charge being given by the court which, in substance, stated: "If you have a reasonable doubt as to whether or not the fire was communicated to the building, and you find and believe from the evidence that the wall paper was burned and the building only scorched you will acquit the defendant and say by your verdict 'not guilty.' " The juror testified: "I remember such a charge being in the papers when read by the court, and also in the jury room. I also remember counsel for the defendant mentioning that in his argument, and I think he told us if we found that the fire was only communicated to the building—that if the fire was not actually communicated to the building—we could not find him guilty." On his cross-examination the juror testified that he was unable to state the substance of the rest of the court's charge. He further testified that he was of the opinion that the charge was on a "separate sheet from anything else." Again, on his cross-examination, he said that he was sure that he charge had been given. He testified that some of the jurors were not satisfied with the testimony touching the question of the communication of the fire to the house, and returned and had some of the testimony reread. The testimony of the foreman and another juror was substantially to the same effect. The clerk of the court testified that the papers in the case had been in his possession during the period after the jury had returned its verdict until the transcript had been prepared. The court reporter, being questioned by appellant concerning the matter, declared upon direct-examination that he could not find in his note book a charge of the character in question. On cross-examination he stated that such a charge had been dictated to him, but that he was unable to say whether he wrote it in his note book or on a separate sheet of paper. He said: "I don't remember that part of it, but do remember that a charge in substance and in effect that unless the jury found that the fire was communicated to the building they should acquit the defendant was dictated to me. I also remember the charge stating in substance that if they merely

found the wall paper or other parts of the building were scorched and the fire not actually communicated to the building they should acquit the defendant." He testified, however, that he did not recall whether or not it was ever written up by him. He said: "I can't be positive about that at all." Counsel for appellant testified that he dictated an exception to the charge for its failure to give the instruction in question, and that the assistant district attorney, upon seeing the exception, dictated a charge to the court reporter covering the issue; that the court reporter took the dictated correction and went to his office, but that when he came back he had not written the instruction into the charge. He further testified that the charge was not given to the jury. Counsel for the state testified that it was their impression that the charge was read to the jury. One of counsel for the state said that it was his recollection that the charge was on a separate piece of paper attached to the main charge with a clip. After hearing the evidence the trial judge entered an order finding that a portion of the charge had been lost, and that the charge in question had been delivered to the jury, and substituted the charge above set out for the lost charge. In a supplemental transcript we now have before us the charge to which reference has been made.

Appellant contends that the procedure was unauthorized for the reason that the state failed to show that the loss of the charge occurred after notice of appeal had been given. Article 828, C. C. P., reads as follows: "The effect of an appeal is to suspend and arrest all further proceedings in the case in the court in which the conviction was had, until the judgment of the appellate court is received by the court from which the appeal was taken. In cases where, after notice of appeal has been given, the record or any portion thereof, is lost or destroyed, it may be substituted in the lower court, if said court be then in session; and, when so substituted, the transcript may be prepared and sent up as in other cases. In case the court from which the appeal was taken be not then in session, the appellate court shall postpone the consideration of such appeal until the next term of said court from which said appeal was taken: and the said record shall be substituted at said term as in other cases."

The opinion is expressed that the statute should be construed to authorize the substitution of a record notwithstanding the loss occurred after the trial began and prior to the giving of notice of appeal.

We are constrained to overrule appellant's contention that the evidence heard by the trial court as to the loss of the charge

was insufficient to support the court's order. The testimony was conflicting. The settlement of the conflicting testimony was a matter for the trial judge. See James v. State, 138 S. W., 408.

Appellant's next contention is that the charge as substituted must be in the exact language of the lost charge. We think this position is untenable. In the absence of copies of the record it would, in most cases, be impossible to substitute the record in its exact language. We think the law requires no more than that the charge be substantially the same as the instruction shown to be lost.

The court charged the jury: "All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons, but others are present and, knowing the unlawful intent, aid by acts, or encourage by words or gestures, those actually engaged in the commission of the unlawful act, such persons so aiding or encouraging are principal offenders, and may be prosecuted as such." Applying the law to the facts, the court required the jury to believe beyond a reasonable doubt that appellant "wilfully set fire to and burned the house of C. E. Wiggins." The law of principals was not specifically applied to the facts of the case. Exceptions were urged to the charge, which, in substance, were that there were no facts in the case warranting the submission of principals; that the law of principals was not applied to the facts, and its converse instructed upon; and that the charge on the subject constituted a comment by the court on the weight of the evidence.

The court charged the jury, at appellant's request, as follows: "You are charged as a part of the law in this case that unless the evidence excludes every other reasonable hypothesis than that of the defendant's guilt you will acquit the defendant and say by your verdict 'not guilty.' Now therefore, if you believe from the evidence or have a reasonable doubt thereof that the house in question was set on fire, if it did catch on fire, by Mrs. Ruth Burns, or by any person other than the defendant, or that it accidentally caught on fire, if it did catch on fire, then you will acquit the defendant and say by your verdict 'not guilty.' "

We deem it unnecessary to decide whether the issue of principals was raised by the evidence. If the issue was in the case and any defensive issue was raised by the testimony of the fact of appellant acting as a principal, then the court should have affirmatively applied the law of principals to the facts in the case and authorized an acquittal if the jury had a reason-

able doubt as to the existence of any defensive facts raised by the testimony. Durham v. State, 16 S. W. (2d) 1092; Gentry v. State, 24 Texas App., 478, 6 S. W., 321. However, the charge should conform to the facts, and it is error to submit any theory of the case not made by the facts which is adverse to the accused. Durham v. State, supra; Finks v. State, 84 Texas Crim. Rep., 536, 209 S. W., 158. If it should be conceded that the issue of principals was not raised, we are unable to perceive how the jury could have reached the conclusion that they were authorized to convict appellant upon a theory additional to that submitted in that portion of the court's charge applying the law to the facts. It has been observed that in applying the law to the facts the court predicated the right of the jury to convict upon the finding that appellant, by his own act, burned the house. The instruction given at appellant's request advised the jury to acquit appellant if Mrs. Burns or any other person committed the offense. The testimony of the defense pointed to the presence in the house of appellant and Mrs. Burns. It suggested the presence of no other person. If the issue of principals was not raised, we are unable to reach the conclusion that the charge, as a whole, authorized the jury to convict on a theory additional to that submitted in that part of the charge applying the law to the facts. The opinion is expressed that to reverse the case because of the charge mentioned would do violence to the statutory command inhibiting a reversal of the conviction on account of a charge not calculated to injure the rights of the accused. Article 666, C. C. P.; Davis v. State, 107 Texas Crim. Rep., 389, 296 S. W., 605; Durham v. State, 16 S. W. (2d) 1092.

As stated, the court authorized a conviction only if appellant was the actual offender; that is, upon the jury finding that he actually burned the house. The jury were pointedly instructed to acquit appellant if they believed that Mrs. Ruth Burns or any other person burned the house. If the testimony raised the issue of principals, a charge on the converse of principals would not have been as favorable to appellant as the requested charge submitting the defensive issue in the language selected by appellant. It is the rule that when a defensive issue is submitted to the jury in the language selected by the accused, he is not in a position to complain because it was not in a different form. Andrews v. State, 275 S. W., 1024. If it should be conceded that the issue of principals was raised and that the law of principals should have been applied to the facts, we deem the omission harmless, and, under the circumstances reflected by the record, express the opinion that, under the

terms of article 666, C. C. P., we would not be warranted in ordering a reversal.

Appellant contends that the charge on principals was calculated to impress the jury with the view that the court was of the opinion that Mrs. Burns was guilty of the offense, and that it would follow that the jury would reach the conclusion that she was unworthy of belief. It has been observed that appellant's written requested instruction advised the jury to acquit him if they believed that Mrs. Burns or any other person committed the offense. If the abstract definition of principals in the main charge,—in which Mrs. Burns' name was not mentioned,—was calculated to impress the jury with the view that the court was of the opinion that she committed the offense, the charge given at appellant's request would appear to have accentuated the matter. In the state of the record we do not think appellant is in a position to criticise the charge on the ground that it constituted a comment on the credibility of Mrs. Burns as a witness. See 4 Tex. Jur., sec. 377, p. 532.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant insists that we should have held it reversible error for the court below to submit the law of principals, it being urged that thereby the trial court intimated,—or impressed the jury with his belief,—that appellant's witness Ruth Burns did or may have acted with him in the commission of the offense here charged.

Officers watching on the night of the fire, said that appellant entered the building about five minutes after midnight. The building was a two story garage, apparently on premises owned by one Wiggins, who seems to have collected the insurance on said building. Wiggins' nephews slept over the garage, but were out of town that night. Ruth Burns was Wiggins' daughter.

The officers said no other person entered said garage that night after appellant did; that something after three o'clock A. M. appellant came out of said garage. In a few minutes there was a flash in the house and successive boom, booms, and apparently flames all over the building. We have set out the facts more fully in our original opinion. Ruth Burns, for the

defense, swore positively that the building was not set on fire. She said "I know it wasn't set on fire." She also said "Mr. Fine did not set that house on fire out there." She further testified that she was keeping company with appellant; that she went out to this garage about midnight to do some ironing, but did not iron. She admitted that she had no iron out there, but said there was one there. She claimed that shortly after she went to said garage appellant came up, and that for two or three hours the pair of them alone drank some thirteen bottles of beer. She said she drank nine bottles and appellant four; that her condition was that she was not drunk, but not too sober. She asserted that appellant left the place before she did, leaving her upstairs in the garage. According to the officers, this was but a few moments before the fire broke out. As above stated, she was the daughter of the man whose property was insured and was burned that night. It appears to us that the trial court, under these facts, was fully justified in charging on principals, and that he might have appropriately used the name of Ruth Burns in such connection.

We have examined the cases of Josef v. State, 34 Texas Crim. Rep., 446, 30 S. W., 1067, and Hazzard v. State, 111 Texas Crim. Rep., 539, 15 S. W. (2d) 638, cited by appellant. In Hazzard's case the trial court told the jury that Christine Gammage was an accomplice. We said in our opinion that there was no testimony supporting such proposition, and since Christine's testimony was favorable to the accused, such charge was hurtful. Substantially the same situation appears in the Josef case. We see no analogy.

The motion for rehearing will be overruled.

*Overruled.*