John Anthony THOMAS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–98–00053–CR.

Court of Appeals of Texas,
Eastland.

May 6, 1999.

Carl Quisenberry, Wichita Fallas, for appellant.

Bill Neal, District Attorney, Seymore, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

The jury convicted appellant of conspiracy to commit burglary of a habitation and of engaging in organized criminal activity. The trial court found the enhancement paragraph "true" and assessed appellant's punishment at confinement for 20 years. Because we find sufficient non-accomplice testimony that "tends to connect" appellant to the offense committed, we affirm.

### Standard of Review

■ The nature of this case requires us to outline both the accomplice and non-accomplice testimony in order to make sure that there is sufficient non-accomplice testimony "tending to connect [appellant] with the offense committed" as required by TEX. CODE CRIM. PRO. ANN. art. 38.14 (Vernon 1979). We disregard all accomplice testimony to test the sufficiency of the non-accomplice testimony to corroborate. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex.Cr.App.1997). The non-accomplice testimony does not have to directly link appellant to the crime, nor does it have to establish guilt beyond a reasonable doubt. *McDuff v. State*, supra at 613. The record must merely contain *some* non-accomplice evidence which *tends* to connect appellant to the offense. McDuff v. State, supra. The accomplice testimony need not be corroborated as to every, or even any, element of the offense charged. *Holladay v. State*, 709 S.W.2d 194, 199–200 (Tex.Cr.App.1986).

■ Evidence that appellant was in the company of the accomplice witnesses before, during, and after the crime, when coupled with other circumstances, can be sufficient to corroborate the accomplice testimony. *McDuff v. State*, supra; *Cockrum v. State*, 758 S.W.2d 577, 582 (Tex.Cr.App.1988); *Paulus v. State*, 633 S.W.2d 827, 846 (Tex.Cr.App.1981)(opinion on rehearing); cf. *Romero v. State*, 716 S.W.2d 519, 522 (Tex.Cr.App.1986); *Gipson v. State*, 819 S.W.2d 890, 892 (Tex.App.—Dallas 1991), *aff'd*, 844 S.W.2d 738 (Tex.Cr.App.1993). The unreasonableness of the hour and a lack of apparent reason for his presence can furnish sufficient corroboration. *Edwards v. State*, 427 S.W.2d 629, 633 (Tex.Cr.App.1968). Also, evidence that appellant was seen in close proximity to the scene of the crime during the time the crime occurred will tend to connect him to the offense. *Burks v. State*, 876 S.W.2d 877, 888 (Tex.Cr.App.1994).

■ One accomplice witness may not corroborate the testimony of another accomplice witness. An accomplice who testifies for the defense, however, is not an "accomplice witness." *Aston v. State*, 656

S.W.2d 453, 455 (Tex.Cr.App.1983); *Cranfil v. State*, 525 S.W.2d 518, 520 (Tex.Cr. App.1975); *Jenkins v. State*, 484 S.W.2d 900, 902 (Tex.Cr.App.1972); *Brown v. State*, 476 S.W.2d 699, 702 (Tex.Cr.App. 1972); *Daviss v. State*, 162 Tex.Crim. 280, 284 S.W.2d 713, 714 (1955); and *Joseph v. State*, 34 Tex.Crim. 446, 30 S.W. 1067, 1068–69 (1895). Because the testimony of an accomplice introduced by the defense is not "accomplice testimony" within the meaning of Article 38.14, it may be used to corroborate accomplice testimony. *Aston v. State*, supra at 456; *Brown v. State*, supra.[1]

### Accomplice Testimony

Two accomplices, Terri Lynn Jones[2] and Michael Devon McPherson, testified for the State. Appellant, Jones, and McPherson lived together in a house in Seymour. Jones was appellant's girlfriend at the time. Luther Lewis Williams, III, was a frequent visitor to the house. Jones and McPherson both told the same basic story, that appellant had engaged them and Williams in a conspiracy to burglarize the Craighead residence in Seymour while the Craigheads were out of town. The purpose of the burglary was to obtain money for Jones, McPherson, and appellant to pay rent. Jones drove all of the conspirators to the Craighead residence on the night of January 5, 1997. McPherson and Williams got out at the residence which sat between the Lubbock Highway and Custer Street in Seymour. Their job was to disarm the security system, break into the residence, and steal money and jewelry. Jones and appellant would drive around town in order to distract the patrol officer on duty. They would periodically check on the progress of the break-in.

During their first attempt to enter the residence, McPherson and Williams twisted off one of the door handles. They could not disarm the security system so they left the residence and began walking along the street. Jones and appellant drove up, and McPherson and Williams got in the car. They explained their problems, and Jones and appellant gave them further instructions about shutting off the electricity to the residence and cutting the phone line. Jones and appellant once again let out their two accomplices at the Craighead residence and resumed driving around town.

Back at the residence, McPherson and Williams pulled the electric meter off and cut the phone line. They then cut a screen and broke a storm window. Apparently, the actual window on the residence was plexiglass, and it would not shatter. Frustrated, McPherson and Williams began walking toward Verna Lorene Skinner's apartment. They hoped to find appellant there because they had given up the second break-in attempt after only 15 minutes and because Jones and appellant were not scheduled to return for another 15 minutes.

As McPherson and Williams walked along the street toward Skinner's apartment, they met the patrol officer. He stopped and asked if they needed help. McPherson told the officer that his pickup had broken down outside of town on the Lubbock Highway but that the two would walk to a friend's house and did not need assistance from the officer. McPherson and Williams waited for Jones and appellant at Skinner's apartment. After Jones and appellant showed up, the four decided to terminate their burglary attempts for the night and go home. Jones and appellant drove home in Jones' car; and Donna Coody, Skinner's neighbor, drove McPherson and Williams home. They took sepa-

---

1. In *Brown v. State,* supra, the written statement of the State's accomplice witness was held to be non-accomplice testimony when the defendant introduced the statement into evidence during his cross-examination of the witness. The statement then served to corroborate the accomplice testimony elicited on direct examination.

2. Jones was known at the time of trial as Terri Lynn Redman.

rate cars so that no one would see them together.

### Non–Accomplice Testimony

Officer Scottie Robertson was the patrol officer on duty from 8:00 p.m. on January 5, 1997, to 4:00 a.m. on January 6, 1997. Officer Robertson observed Jones' blue Trans Am driving "all during the night." He observed Jones driving the car and appellant riding with her in several lighted areas in town. Officer Robertson saw the car "several times" after midnight on the Lubbock Highway around the Craighead residence. Around 2:00 a.m. on January 6, Officer Robertson saw the car on Custer Street around the Craighead residence. This was about the time that Jones and appellant dropped off McPherson and Williams for their second attempt. Later, Officer Robertson met McPherson and Williams on the street, where McPherson told him the story about his pickup breaking down. Officer Robertson left the two men walking and drove out along the highway to look for the pickup. He did not find it. Still later, Officer Robertson saw Jones, McPherson, Williams, and appellant at the Coody residence. Officer Robertson testified that he was suspicious of appellant and his accomplices because "they all seemed to be coming back and forth from that way [the Craighead residence]."

Seymour Chief of Police Floyd Burke testified that he received a call on January 9, 1997, from a workman at the Craighead residence. The workman had discovered the broken door knob, the torn screen, and the broken storm window. Further investigation revealed that the phone line had been cut and that the electric meter had been removed. Chief Burke introduced pictures of the crime scene which included the broken storm window, broken door knob, and the removed electric meter.

Williams testified for appellant. Williams claimed that, although appellant rode in the car with McPherson, Jones, and Williams on the night of the burglary, appellant was not part of the conspiracy and knew nothing about the plans. Williams testified that Jones let him and McPherson out of the car at a motel located near the Craighead residence and that the three accomplices told appellant that Williams and McPherson were going to meet some women. Williams and McPherson then walked along a creek to the Craighead residence. After the two were unsuccessful in breaking into the residence, they left the scene. Jones and appellant picked the two up, and the group returned home.

The group stayed at home for several minutes, appellant and Williams in the living room watching TV and Jones and McPherson in the bedroom. Williams testified that Jones and McPherson were having an affair behind appellant's back. At some point, Jones and McPherson returned to the living room and announced that the group would leave the house again. Williams maintained that appellant knew nothing about the planned burglary and that McPherson and Jones were the leaders of the conspiracy. Jones dropped McPherson and Williams off at the Craighead residence with instructions about disconnecting the electricity. Once again, the two failed to gain entrance into the residence. Jones and appellant picked them back up. Williams testified that the four drove around for a short time and then went home. Williams testified that he and McPherson met Officer Robertson on the street between the first and second attempts, rather than after the second.

Tracy Lee Hendershot testified for appellant that McPherson and Williams invited her to participate in the burglary of the residence. She claimed that McPherson and Williams told her that, if they were caught, they would blame everything on appellant.

Opal Sirmons, appellant's mother, testified that she met up with Jones around 11:00 p.m. on January 5, 1997. Sirmons rode around with Jones in Jones' car for one and one-half or two hours. During

that time, Sirmons saw Officer Robertson's patrol car. Sirmons testified that appellant was at Skinner's apartment the entire night, doing laundry and drinking. Sirmons went home around 1:00 a.m. on January 6. She testified that, at the time of the offense, appellant and Jones were unemployed.

Skinner[3] testified for appellant. She claimed that appellant came to her apartment to do laundry about 10:00 p.m. on January 5, 1997. Appellant left the apartment to go home between 1:00 a.m. and 2:00 a.m. on January 6. Prior to that, appellant had left only once: "long enough to go to Allsup's to get a Dr. Pepper" and come back. On cross-examination, the State impeached Skinner with her prior statements to the police and the district attorney's investigator that appellant was not at her house on the night of the attempted burglary.

Skinner also testified that McPherson and Williams came to her apartment around 3:00 a.m. on January 6. McPherson told Skinner about the attempted burglary and how he and Williams had failed to break the glass because it was "shatterproof." McPherson and Williams left Skinner's apartment with Coody, whom they asked to take them home. Skinner heard McPherson tell appellant something about "glass" when they were outside her apartment, and she then heard appellant's response. She testified that "John griped him out, griped [McPherson] out. He sounded very angry."

Coody testified as a rebuttal witness for the State. She testified that appellant and Jones came over to her apartment to do laundry around 7:00 p.m. or 8:00 p.m. on January 5, 1997. Coody testified that appellant and Jones were "in and out" of the apartment all that night but that she did not know where the two went during those times. Coody gave McPherson and Williams a ride home after they arrived at

her house around 1:30 a.m. or 1:45 a.m. on January 6. Jones and appellant stayed at the apartment to watch Coody's children while she gave McPherson and Williams a ride home.

### Non–Accomplice Testimony Sufficient to Corroborate

Testifying as witnesses for the State, Jones and McPherson were accomplice witnesses as a matter of law because both had pleaded guilty to the same offense with which appellant was charged. Williams had also pleaded guilty to the same offense, but he was not an accomplice witness because appellant offered Williams' testimony. Thus, Williams' testimony need not be corroborated, and it can serve to corroborate the other accomplice testimony.

The non-accomplice testimony in this case shows that appellant was seen before, during, and after the commission of the offense in the company of the accomplices. Even Williams placed appellant with the accomplices before, during, and after the offense near the scene of the offense. Coupled with the unreasonableness of the hour and appellant's lack of an apparent reason for riding around town near the Craighead residence, this furnishes some corroborating evidence. The non-accomplice testimony also shows that appellant "griped [McPherson] out" after McPherson mentioned something about glass to appellant. McPherson had told Skinner that he and Williams couldn't break the glass. Non-accomplice testimony also corroborated the fact that McPherson and Williams rode home separately from Jones and appellant. Sirmon's testimony that neither appellant nor Jones were employed at the time of the offense serves to offer a motive for the conspiracy.

We hold that there was sufficient non-accomplice testimony that tended to connect appellant to the commission of the conspiracy to commit burglary.[4] Given

---

3. Skinner was known as Verna Lorene Beltz at the time of trial.

4. A criminal conspiracy is, by nature and necessity, a clandestine operation. The con-

sufficient evidence to support the conviction for conspiracy, it follows that the evidence is also sufficient to connect appellant to the offense of engaging in organized criminal activity.[5] We overrule appellant's sole point of error.

### This Court's Ruling

We affirm the trial court's judgment.

spirators may be the only people privy to the existence of an agreement that precedes an overt act to further that agreement. See TEX. PENAL CODE ANN. § 15.02(a) (Vernon 1994). Thus, corroborating non-accomplice testimony will usually tend to connect a defendant to the overt act rather than to the agreement. Sufficient evidence that tends to connect a defendant to the overt act would allow a jury to infer that he or she was a party to the agreement to commit the offense.

5. A person commits the offense of engaging in organized criminal activity if he, intending to establish, maintain, or participate in a combination, *conspires to commit*, among other things, burglary. TEX. PENAL CODE ANN. § 71.02(a)(1) (Vernon Supp.1999). A "combination" is three or more persons who collaborate in carrying on criminal activities. TEX. PENAL CODE ANN. § 71.01(a) (Vernon 1994).