JOHN JOSEF V. THE STATE.

*No. 652.   Decided May 8.*

1, **Homicide—Corpus Delicti—Infanticide**—In homicide, the corpus delicti consists not only in the finding and identification of the dead body; but also that it came to its death by some criminal means or agency on the part of the accused. And in a case of infanticide, the proof must establish that the child was born alive.

2. **Same—Fact Case.**—See facts stated in the opinion, which the court holds insufficient to sustain a conviction for infanticide.

3. **Accomplice Testimony—Charge of Court.**—Where the facts show that if a crime had been committed, witness M. N. was certainly an accomplice, and witness was not introduced by the State, and her testimony was all favorable to defendant, and the court charged the jury, that if the State relied upon her testimony in any measure for a conviction, they were to discredit it to the extent of requiring its corroboration before they could convict; *Held,* this charge was erroneous in the absence of a pertinent charge telling the jury, in this connection, that the same rule did not apply where the witness' testimony was in favor of defendant.

APPEAL from the District Court of Hunt.   Tried below before Hon. E. W. TERHUNE.

Appellant was convicted of murder of the second degree, and his punishment assessed at confinement in the penitentiary for ten years.

This is the second appeal in this case.   See Josef v. The State, 33 Texas Criminal Reports, 251.

HURT, PRESIDING JUDGE.—This case was heard at the Dallas Term, 1895.   Because there was no order in the transcript allowing ten days after adjournment of court within which to file a statement of facts, the statement of facts was stricken out, and the case affirmed. On the motion for a rehearing, it was made to appear that said order was made and carried into the final minutes of the court, and a copy of same, with the certificate of the district clerk, is now before us.   The judgment in said case is accordingly set aside, and a rehearing is granted.

From the evidence in this case, it appears that in a cistern, at or near the premises occupied by appellant and Marie Nicholas, a dead infant was found.   When found, it was in a decomposed state, and appeared to have been in the cistern some three or four days.   Marie Nicholas testified, that she gave birth to the child; that she did so in a privy on the premises; that after its birth it uttered a cry, and she took it up, and it immediately died; and that by herself, without any knowledge on the part of any person, she disposed of it in the cistern. The State relied for a conviction of the defendant in this case upon circumstantial evidence, the substance of which was as follows:   It was shown that defendant and Marie Nicholas were Syrians, and engaged in the business of peddling together; that they had been sojourning for a few weeks in the town of Greenville with two other Syrians, one a son of Marie Nicholas, and lived temporarily in a house together.

It was shown that they slept in the same room (all the parties), but Marie Nicholas slept in a bed by herself; that some day prior to the alleged infanticide, Marie Nicholas had an enlarged stomach; that she complained of dropsy, and procured medicine to relieve her of that disease; that on the discovery of the child in the cistern (how it happened to be made does not appear), the officers, with a physician, entered the house, and found Marie Nicholas and the defendant in the room. Marie was in bed. The defendant resisted their coming into the house, and also resisted when they proposed to examine Marie to ascertain if she had been delivered of a child recently. The examination was, however, made, and it was ascertained that she had been recently delivered of a child, and the bedclothing also indicated the same fact. She had previously strenuously denied this. The defendant also had denied any knowledge of such fact. On the examination of the infant, it was discovered that the cord around its neck was very tightly drawn; and physicians testified to the effect that the cord might have produced strangulation, and have caused death to the child. They also testified, from experiments with portions of the lung from the corpse, that the child was born alive.

 · The rule, as we understand it, in every case, before a party can be convicted of criminal homicide, requires that the corpus delicti be proved; and this means not only that the dead body of the deceased person shall be found and identified, but that it must also be shown that it came to its death by some criminal means or agency on the part of the accused; and, in the case of infanticide, it must also be established that the child was born alive. Now, if we look alone at the testimony of the State, while we might consider that it was sufficiently proven that the child was born alive, the evidence that it came to its death by some criminal means or agency would hardly appear to be established with that degree of certainty which would authorize the jury to say that there was no reasonable doubt of this question; and the testimony is still weaker when we come to connect the defendant with the alleged crime. And, moreover, when we look beyond this testimony to that of Marie Nicholas, the defendant is totally disconnected with the death of said infant. The account of this witness presents an hypothesis as to the delivery and death of the child in question that does not appear to be unreasonable; but even conceding that the testimony shows that she might be held responsible for the offense, it fails to connect the defendant with the alleged crime to that degree of certainty required in a case of circumstantial evidence. The most suspicious circumstances that can be urged against him were, that he was living in the same house with the woman; that they had been engaged together in the business of peddling some time prior; and that, when an attempt was made to examine the woman to see if she had been recently confined he resisted same, and told them that she was "ashamed" to be examined. This conduct on his part, it seems to us, would be equally consistent with the theory that the woman had

had an illegitimate child by him, which died from natural causes, and that he desired to conceal the same, as that he had participated in the criminal disposition of said child, and was anxious to cover up the crime.

The appellant in this case also contends, that the court erred in submitting to the jury a charge on accomplices' testimony, applying same to the witnesses Marie Nicholas and Habib Ashmer. This charge would not appear to be objectionable as to the latter witness, as he was introduced by the State. But how are we to regard it as to the witness Marie Nicholas, who was introduced and testified for the defendant? The statute (article 741, Code of Criminal Procedure) provides, that "a conviction can not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense." If there was a crime committed in this case, certainly Marie Nicholas was an accomplice. She was not introduced by the State as a witness, and all of her testimony was in favor of the defendant; and yet the jury were told that, if the State relied for a conviction in any measure upon her testimony, they were to discredit it to the extent of requiring its corroboration before they would be authorized to convict. While this might be true as an abstract proposition, yet, without a pertinent charge telling the jury in this connection that the same rule did not apply to said witness where her testimony was in favor of the defendant, it was liable to mislead and confuse the jury, and to discredit said witness when they should come to consider her testimony. Under such a charge they were liable to regard the same rule applicable to the State as equally applicable to the defendant, and to require that she be corroborated before they would be authorized to acquit the defendant upon the testimony of said witness alone. We believe that the charge was erroneous as to said witness.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.