Gary JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 70713.

Court of Criminal Appeals of Texas, En Banc.

Dec. 16, 1992.

Rehearing Denied March 17, 1993.

Roy E. Greenwood, court appointed on appeal, Austin and Hal Ridley, on appeal only, Huntsville, for appellant.

Frank Blazek, Dist. Atty., Timothy J. Ferreri, Asst. Dist. Atty., Huntsville, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BENAVIDES, Judge.

Appellant was convicted of Capital Murder for intentionally killing James Hazelton and Peter Sparagana during the same criminal transaction. Tex.Penal Code Ann. § 19.03(a)(6)(A) (West 1990). After the jury returned an affirmative answer to both special issues submitted under Tex. Crim.Proc.Code Ann. Art. 37.071(b) (West 1988), the judge assessed a sentence of death. The judgement of the trial court is affirmed.[1]

### I.

On the evening of April 30th, 1986, Bill and Shannon Ferguson were in their pasture waiting on a mare to foal. Sometime before 10:00 p.m. they observed a truck heading in an eastward direction pull over near a gate of the adjacent Triple Creek Ranch. They noticed someone get out of the truck, heard a chain rattle on the gate, and observed someone from the truck go through the gate and onto the ranch. The truck's headlights had been turned off, but Mrs. Ferguson noticed that when the driver of the truck applied the brakes, an unusual brake light pattern appeared. Concerned there was a burglary in progress, Mrs. Ferguson ran to her house to call the ranch managers, the Hazeltons. Other evidence showed that the original chain had been cut and a new lock had been placed on the gate.

Fifteen minutes later, the Fergusons observed Jim Hazelton's truck appear at the same gate on Highway 30. Unable to enter that gate, Hazelton backed up and entered the Ranch from another location.

---

1. By per curiam order we withdrew our original opinion of December 19, 1990. The cause was resubmitted on original briefs on May 23, 1991.

Eventually, the Fergusons heard Hazelton's truck stop. Upon hearing a gunshot, Mrs. Ferguson rushed to her house to phone Mrs. Hazelton and the police.

While Mrs. Ferguson was calling the police, Mr. Ferguson remained in the pasture watching to see if anyone exited the gate. Several minutes after the first gunshot, Mr. Ferguson heard several shots fired in rapid succession. After a brief silence, Mr. Ferguson heard someone plead for his life. The pleas were silenced by two more shots.

When the police arrived, they discovered the bodies of Jim Hazelton and Peter Sparagana, Hazelton's brother-in-law, dead from bullet wounds fired at close range.

At trial the State presented damaging evidence from three of appellant's brothers—Tracey, Randy, and Ricky. Tracey Johnson testified that appellant came to Missouri during the fall of 1986, returned Tracey's .44 caliber pistol and asked him to destroy it because the pistol had been involved in a double murder in which appellant and their brother Terry had participated.

During that same visit to Missouri, Ricky Johnson testified that appellant was in possession of the .44 caliber pistol; that appellant admitted killing one man with the gun; and that appellant and Terry had also killed a second man. A state firearms examiner later identified a bullet fragment retrieved from Hazelton's body as being fired from the same .44 caliber pistol appellant returned to Tracey.

Randy Johnson also testified that appellant told him of the events that transpired at the Triple Creek Ranch. Appellant told Randy that he and Terry were out at the Triple Creek to steal something when two men "got the drop on them." While Terry distracted them, appellant was able to shoot one of the men. Appellant and Terry caught the other man, brought him back to the barn, made him kneel, and tied his hands behind his back. While the second man plead for mercy, appellant shoved the gun in his mouth. The medical examiner later testified that the second man died from a contact bullet wound to the mouth.

Appellant explained the reason for killing the two men to his brother Randy: "Dead men don't talk."

## II.

■ In the first point of error, appellant contends that he was entitled to an accomplice-witness instruction under Tex.Code Crim.Proc.Ann. Art. 38.14 (West 1979):

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Appellant requested the instruction because of the testimony of Terry Johnson, appellant's brother, who was indicted for the same offense. As part of a plea agreement with the state, Terry Johnson had agreed to testify against his brother. The state, however, decided their evidence was complete without Terry's testimony and chose not to call Terry to the witness stand. During defense's case-in-chief, appellant attempted to inculpate Terry by calling him to testify. On direct examination by defense counsel Terry testified as to his participation in the robbery and inculpated appellant in the killing of Hazelton and Sparagana.

Appellant recognizes prior case law which indicated that when an accomplice is called by the defense to testify on behalf of the defense, no accomplice-witness instruction is required. But appellant argues the rationale for such a rule was based on the old "voucher" rule which is no longer in effect, and thus appellant was entitled to the instruction. *See Russeau v. State*, 785 S.W.2d 387 (Tex.Crim.App.1990). However, in *Selman v. State*, this Court reaffirmed the "established principal in this State that testimony elicited from a witness called by the accused and offered by the accused is not accomplice-witness testimony which must be corroborated as contemplated under Article 38.14." 807 S.W.2d 310, 311 (Tex.Crim.App.1991); *see also Brown v. State*, 576 S.W.2d 36, 42 (Tex. Crim.App.1979); *Cranfil v. State*, 525

S.W.2d 518, 520 (Tex.Crim.App.1975); *Aston v. State*, 656 S.W.2d 453, 456 (Tex. Crim.App.1983) (trial court erred in giving accomplice-witness instruction where witness was called by defense). The very language of the rule illustrates its inapplicability to appellant's cause. The statute begins, "A conviction cannot be had upon the testimony of an accomplice ..." *supra.* But the State did not rely on the accomplice's testimony but closed its case-in-chief without calling him. It did not seek a conviction based upon the testimony of Terry Johnson. The statute provides for situations where a conviction is based in some part on the testimony of an accomplice. In this case, the witness was called by the defense, and his testimony as to the events of the crime was elicited by the defense. While the State did cross-examine the witness concerning his testimony, the witness had already testified as to the events of the crime. *See Selman, supra* (Miller, J. concurring opinion). As we opined in *Selman,* "accomplice-witness testimony must be corroborated and the jury so instructed only when the State calls the witness and seeks to rely on such witness's testimony." 807 S.W.2d at 311. This is not the type of evidence which must be corroborated under the statute. No accomplice-witness instruction was required.

■ Point of error three is related to point of error one. Appellant complains that because the trial court failed to give an accomplice-witness instruction during the guilt-innocence phase, the evidence is insufficient to support the jury's affirmative finding to special issue number one during the punishment phase. Appellant contends, among other things, that if the testimony of Terry Johnson was excluded the remaining evidence is circumstantial as to the issue of deliberateness and the jury was left in the position of guessing how the actual deaths occurred. But since all of his arguments are predicated on the contention that the trial court improperly failed to instruct the jury on the accomplice-witness rule during the guilt-innocence phase, we reject appellant's arguments.

■ We find there is sufficient evidence to find appellant acted deliberately. The facts at the guilt stage of the trial alone can often be sufficient to support the affirmative finding of the jury to the special issues at the penalty stage of the trial. *Williams v. State*, 773 S.W.2d 525, 538 (Tex.Crim.App.1988), *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). "A jury must find 'a moment of deliberation and the determination on the part of the actor to kill' before it is justified in answering 'yes' to special issue number one." *Kinnamon v. State*, 791 S.W.2d 84, 95–96 (Tex.Crim.App.1990). The determination of deliberateness must be found from the totality of the circumstances. *Williams*, 773 S.W.2d at 539; *Cannon v. State*, 691 S.W.2d 664, 677 (Tex.Crim.App. 1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). In determining the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the verdict. *Dunn v. State*, 819 S.W.2d 510, 513 (Tex.Crim.App.1991); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Hazelton died as a result of gunshot wounds to the head, a contact type gunshot wound to the face into the neck, and a graze wound to the right shoulder. The medical and firearms examiner identified the fragments retrieved from the neck of Hazelton as being fired from the .44 caliber pistol retrieved from appellant's brother Tracey. There were also .38 caliber fragments retrieved from the gunshot wound to the head. The medical examiner's testimony and the evidence of the position of the body was consistent with someone being shot at point blank range in the face, and then when Hazelton was lying on the ground he was again shot in the head by someone standing over the body. The contact wound to the face could illustrate deliberateness.

But in addition to the wounds, Terry Johnson testified during defense's direct that he told appellant someone was coming up in a truck through the woods. Appellant's reply was that they would have to shoot it out because he was not going to get caught. While Terry went to look for a

means of escape, appellant hid in waiting. The evidence reflects much more than an intentional killing of Hazelton. Appellant recognized and determined that by killing Hazelton and Sparagana, he could not be implicated because, as he told Randy: "Dead men don't talk." Viewed in the light most favorable to the verdict, the evidence is sufficient to allow a rationale juror to have found beyond a reasonable doubt that appellant deliberately killed Hazelton. Appellant's first and third points of error are overruled.

### III.

■ In appellant's second point of error, he contends that the evidence was insufficient for the jury to return affirmative finding to the question of future dangerousness. Again, in determining the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the verdict. *Dunn v. State*, 819 S.W.2d 510, 513 (Tex.Crim.App.1991); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ The jury can consider numerous factors in determining whether the defendant poses a continuing threat to society including, but not limited to, the following:

1. The circumstances of the capital offense, including the defendant's state of mind and whether he or she was working alone or with other parties;

2. The calculated nature of the defendant's acts;

3. The forethought and deliberateness exhibited by the crime's execution;

4. The existence of a prior criminal record, and the severity of the prior crimes;

5. The defendant's age and personal circumstances at the time of the offense;

6. Whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;

7. Psychiatric evidence; and

8. Character evidence.

*Keeton v. State*, 724 S.W.2d 58, 61 (Tex. Crim.App.1987).

Specifically, appellant claims that "the mere fact of two persons being murdered in the same transaction should not be considered a special factor" on the issue of future dangerousness in the second special issue. *See* Tex.Code Crim.Proc.Ann. Art. 37.071(b)(2) (West 1988). But it is not the mere fact of two persons being murdered that is a special factor. No killing exists in a vacuum. The circumstances of the offense, and the events surrounding it may provide greater probative value than any other evidence regarding the probability of future acts of violence. *Alexander v. State*, 740 S.W.2d 749, 761 (Tex.Crim.App. 1987); *see also Vuong v. State*, 830 S.W.2d 929, 935 (Tex.Crim.App.1992); *Sosa v. State*, 769 S.W.2d 909, 912 (Tex.Crim.App. 1989); *Moreno v. State*, 721 S.W.2d 295 (Tex.Crim.App.1986). We are unwilling to abandon this view and to disregard the circumstances of the offense in making our sufficiency review.

During the punishment hearing, a state's expert testified that the defendant represented a future threat to society. There was also testimony from a neighbor that appellant shot and killed his dog. Appellant fired a semi-automatic rifle at a range of 75 to 100 feet killing the dog which was approximately 3 to 5 feet from appellant's neighbor. When the jury considered the second issue, the circumstances surrounding the criminal act itself were certainly more damaging than the testimony at punishment. Evidence at trial also indicated appellant had previously worked on the ranch. This work presented appellant ample opportunity for him to prepare a plan for the burglary. Appellant and his brother entered the Triple Creek Ranch late at night. They cut the gate's lock and replaced the lock with one of their own to prevent detection and entered the ranch heavily armed with an intention of stealing a specific welder that appellant had observed at the ranch.

When appellant and his brother heard the approaching truck, instead of fleeing the scene, appellant hid in waiting. As Hazelton and Sparagana approached, appellant's brother distracted Hazelton providing appellant an opportunity to shoot Ha-

zelton and capture Sparagana. Appellant then had Sparagana get on his knees, and while Sparagana plead for mercy, appellant shoved the pistol barrel in Sparagana's mouth and fired. The *purpose* for both murders was that "dead men don't talk." The circumstances of the offense are such that the jury could rationally find beyond a reasonable doubt that appellant presented a future threat to society. *See Vuong*, 830 S.W.2d at 935. Accordingly, appellant's second point of error is overruled.

## IV.

In points of error four, five, and six, appellant attacks the court's charge during the guilt-innocence phase of the trial on numerous grounds including the constitutionality of Tex.Penal Code Ann. § 19.-03(a)(6)(A).[2]

In point of error four, appellant contends § 19.03(a)(6)(A) is unconstitutional in its application, violating the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 13, of the Texas Constitution, and that the statute is unconstitutionally vague and indefinite under numerous provisions of the Texas and U.S. constitutions. We disagree.

■ While appellant complains that § 19.03(a)(6) violates the Texas Constitution, appellant proffers no argument or authority as to the protection offered by the Texas Constitution or how that protection differs from the protection guaranteed by the U.S. Constitution. We decline to pursue appellant's Texas Constitutional arguments for him. *Narvaiz v. State*, 840 S.W.2d 415 (Tex.Crim.App.1992); *Morehead v. State*, 807 S.W.2d 577, 579 n. 1 (Tex.Crim.App.1991); *McCambridge v. State*, 712 S.W.2d 499, 501–502 n. 9 (Tex. Crim.App.1986); Tex.R.App.Proc. 74 and 210.

■ With regard to the claims under the U.S. Constitution, we note that prior to the enactment of § 19.03(a)(6) the Supreme Court upheld the constitutionality of the Texas capital punishment scheme in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (plurality opinion). When analyzing whether a state's capital murder scheme is violative of the Eighth Amendment, the Supreme Court has continually considered whether the scheme sufficiently narrows or limits the class of death-eligible defendants and whether the scheme allows a jury to sufficiently consider the mitigating evidence. *Jurek v. Texas*, 428 U.S. at 273–274, 96 S.Ct. at 2957; *Blystone v. Pennsylvania*, 494 U.S. 299, 305, 110 S.Ct. 1078, 1083, 108 L.Ed.2d 255 (1990).

Initially we must decide whether the Texas capital murder scheme, with the enactment of § 19.03(a)(6), complies with the Eighth Amendment by sufficiently narrowing the class of death-eligible defendants. In *Blystone v. Pennsylvania*, the Supreme Court noted "[the] presence of aggravating circumstances serves the purpose of limiting the class of death-eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by the jury." 494 U.S. at 306–07, 110 S.Ct. at 1083. While we note that with the addition of Tex.Penal Code § 19.03(a)(6) the Texas capital murder scheme is broader than it existed when *Jurek* was decided, the addition of a second "murder" to the list of aggravating circumstances, such as rape, burglary, kidnapping, etc., does not make the Texas statute overbroad so as to violate the Eighth Amendment. The addition of this aggravating circumstance to the Texas capital murder scheme adequately channels the jury's discretion in the assessment of punishment, thus satisfying the Eighth Amendment. *Narvaiz v. State, supra;*

---

**2.** Section 19.03 of the Penal Code provides, in pertinent part, that:
(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:
. . .
(6) the person murders more than one person:

(A) during the same criminal transaction; or
(B) during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct.

*Blystone v. Pennsylvania,* 494 U.S. 299, 305, 110 S.Ct. 1078, 1083 (1990). We reject appellant's facial attack to the statute in his fourth point of error.

In the same point of error, appellant additionally argues that the statute is void for vagueness because the statute fails to define the terms "criminal transaction" and "same scheme or course of conduct." Initially, appellant must show that the statute is unconstitutional as applied to him. *Vuong,* 830 S.W.2d 929, 941 (Tex.Crim. App.1992); *Parent v. State,* 621 S.W.2d 796, 797 (Tex.Crim.App.1981). Because the phrase "same scheme or course of conduct" relates to § 19.03(a)(6)(B) which was inapplicable to his conviction, the constitutionality of that portion of the statute may not be challenged. *See Vuong,* 830 S.W.2d at 941; *Parent,* 621 S.W.2d at 797.

We also find that the term "criminal transaction" is not vague as applied to the facts of this case. There is no dispute on appeal that appellant and his brother entered the property with the intent to steal certain specified items from the Ranch. While appellant and his brother were in the course of this transaction, two men discovered their presence. While one of the men was distracted appellant shot him. The other man was caught and shot execution style. Appellant's brief only suggests that appellant, himself, did not murder both men, but that instead his brother actually pulled the trigger. While these issues may present a defense to the capital murder charge, we cannot see how this even raises the issue of whether the murders were committed within the same "criminal transaction." As we stated in *Vuong,* "[e]ven the most narrow construction of the term 'same criminal transaction' would include the type of actions the jury determined were committed by appellant." 830 S.W.2d

at 941. Appellant's constitutional challenge to the statute on the basis that it is void for vagueness is also rejected in appellant's fourth point of error.

In both points of error four and five, appellant recognizes the general rule that the law of parties applies to the capital murder statute. Nevertheless he contends the legislature did not intend for the law of parties to apply to the newly enacted § 19.03(a)(6)(A). We refuse to read such an exception in the statute. This Court has continually held that the law of parties announced in §§ 7.01 and 7.02 is applicable to capital murder cases. *Crank v. State,* 761 S.W.2d 328, 351 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989); *English v. State,* 592 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980); *Ruiz v. State,* 579 S.W.2d 206, 209 (Tex.Crim.App. [panel op.] 1979); *Pitts v. State,* 569 S.W.2d 898 (Tex. Crim.App.1978) (en banc). It would be an anomaly for this court to say the law of parties under §§ 7.01 and 7.02 applies to capital murder cases except under § 19.03(a)(6), where there is no language in the statute indicating such an exception. *See Boykin v. State,* 818 S.W.2d 782 (Tex.Crim. App.1991); *Garcia v. State,* 829 S.W.2d 796, 799 (Tex.Crim.App.1992) (plurality opinion) ("As jurists, we are obliged to implement the expressed will of our legislature, not the will it keeps to itself.")

Appellant's final arguments, intertwined within points of error four, five and six, are based on the assumption that the law of parties does not apply to § 19.03(a)(6)(A). At trial during the guilt-innocence stage, the jury was instructed on the law of parties under Tex.Penal Code §§ 7.01 and 7.02.[3] (West 1990). Appellant's argument

---

3. The jury was instructed on the law of parties under § 7.01(a), which states:

   A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

   The trial court also instructed the jury under § 7.02(a)(2) and (b):

(a) A person is criminally responsible for an offense committed by the conduct of another if:

·    ·    ·    ·    ·

   (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense ...
   (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is

is both a constitutional argument and a challenge to the interpretation of the statute.

Appellant contends a capital murder conviction based on the law of parties under § 7.02(b) is unconstitutional under *Enmund v. Florida*, 458 U.S. 782, 788, 102 S.Ct. 3368, 3371, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Appellant's reliance on *Enmund* and *Tison* are misplaced.

The Texas capital murder scheme does not allow an individual to be put to death for merely being a party to a murder. As this court said in *Cuevas v. State*:

> To be convicted of a capital felony in Texas, a defendant must intentionally or knowingly cause the death of an individual in certain enumerated circumstances. *See* V.T.C.A., Penal Code Sec. 19.03. Of course, application of the law of parties at the guilt phase means it is possible for a non-triggerman, such as appellant, to be convicted of a capital offense. However, a capital defendant will be assessed the death penalty only if the jury answers the special issues of Art. 37.071(b) in the affirmative. Special issue number one requires the jury to determine "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with reasonable expectation that the death of the deceased would result." Because the law of parties may not be applied in answering this issue, an affirmative verdict is possible only when the jury finds that the defendant's *own* conduct satisfies both parts of special issue number one. *Therefore, the first special issue of Art. 37.071(b) includes the Enmund and Tison findings.*

742 S.W.2d 331, 343 (Tex.Crim.App.1987), *cert. denied* 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988). The Texas special issue contained in Art. 37.071(b) sufficiently limits the imposition of death so as to meet constitutional challenges under *Enmund* or *Tison*. Having found that an individual may be found guilty of capital murder based on the law of parties and the statute is constitutional as applied to appellant, his fourth, fifth, and sixth points of error are overruled.

## V.

■ Appellant next complains of certain instructions given to the jury in the court's punishment charge. The instructions immediately preceded the first special issue and provided as follows:

> In answering Special Issue No. 1 you are instructed that before you may answer "yes" to Special Issue No. 1, you must find from the evidence, beyond a reasonable doubt, that the defendant, Gary Johnson, either solely caused the death of James Hazelton and Peter Sparagana by shooting them with a handgun, or that the defendant contemplated that the death of James Hazelton and Peter Sparagana would result while acting as a party or in furtherance of a conspiracy to commit the offence [sic] of burglary of a building.

Appellant's seventh, eighth and ninth points of error essentially complain of error in the use of three specific terms—"contemplated," "party," and "conspiracy," respectively in the instruction quoted above. Because appellant failed timely to object to the Court's charge, appellant must claim any such error was 'fundamental,' and "... he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'— in short 'egregious harm.' " *Almanza v. State*, 686 S.W.2d 157 at 171 (Tex.Cr.App. 1984).

■ In point of error seven, appellant contends that the trial court's insertion of the word "contemplated" rises to the level of egregious harm because of its vague and indefinite nature and thus, since the court did not give a concomitant definition of the term, appellant was denied due

committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

course of law under Article I, Sections 10, 13 and 19 of the Texas Constitution. Because the court failed to define "contemplated" in the charge, appellant argues the jury did not examine appellant's conduct but rather what appellant may have contemplated. We do not believe that the term "contemplated" has become so technical that it is a legal term of art requiring the trial court to define the term. As opined in *Russell v. State:*

> Where terms used are words simple in themselves and are used in their ordinary meaning, jurors are supposed to know such common meaning and terms, and under such circumstances such common words are not necessarily to be defined in the charge to the jury. [Citations omitted.]

665 S.W.2d 771, 780 (Tex.Crim.App.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752, *rehearing denied,* 466 U.S. 932, 104 S.Ct. 1720, 80 L.Ed.2d 192 (1984). The jury was entitled to give the term the common and ordinary meaning of the word. We are not persuaded that the trial court erred in failing to instruct the jury on the definition of "contemplated."

■ Appellant also argues that the preparatory instruction for special issue one is fundamentally defective because it allows the jury to answer in the affirmative without any regard to the specific conduct of the defendant. While the preparatory instruction, by ˙itself, may not focus the jury's attention on the conduct of appellant, special issue one clearly does:

> Was the *conduct of [appellant]* that caused the death of the deceased, James Hazelton and Peter Sparagana, *committed deliberately and with the reasonable expectation that the death of the deceased or another would result.*

[Emphasis added.] Because the first special issue correctly focuses the jury's attention on the conduct of appellant, and no egregious harm is shown, his seventh point of error is overruled.

■ Appellant further complains that the term "party" in the preparatory instruction constitutes an instruction on the law of parties, such that, appellant can be sentenced to death for being merely a party to the offense. Appellant correctly notes that the law of parties cannot be applied to the punishment phase of a capital murder trial. *Green v. State,* 682 S.W.2d 271 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). When the law of parties is presented to the jury in the guilt phase of a trial, a trial court should give an "anti-parties" charge at punishment when requested. *Belyeu v. State,* 791 S.W.2d 66, 73 (Tex.Crim.App.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 1337, 113 L.Ed.2d 269 (1991); *Webb v. State,* 760 S.W.2d 263, 268 (Tex.Crim.App.1988); *Cuevas v. State, supra.*

Appellant argues that failure to give such an instruction is harmful whether or not an objection is made, thus requiring a reversal under Tex.R.App.P. 81(b)(2). We disagree. Absent an objection or request, an "anti-parties" charge is not required by statute or by the constitution. *Belyeu v. State,* 791 S.W.2d at 73; *Green v. State,* 682 S.W.2d 271 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Because no objection is made, appellant's eighth point of error is rejected.

■ Appellant specifically complains in point of error nine that the preparatory instruction was fundamentally defective because it lessened the prosecutor's burden. Appellant believes the jury was authorized to answer affirmatively to special issue number one, if appellant was shown to be "in furtherance of a conspiracy to commit the offense of burglary of a building." Essentially, appellant argues, if the jury found appellant participated in a conspiracy they were authorized to answer the special issue in the affirmative. The charge merely instructed the jury that if, at the guilt phase of the trial, their guilty verdict was predicated upon § 7.02(b), criminal responsibility involving conspiratorial liability, then at the punishment phase, in order to warrant the affirmative finding, it was mandated that the jury find from the evidence beyond a reasonable doubt that appellant "contemplated" that the death of

the victims would result. Coupled with the instruction focusing on appellant's own conduct causing the death of the victims which was committed by him deliberately with the reasonable expectation that death would result, we fail to see any egregious harm which could have resulted from the trial court's instruction. Point of error nine is overruled.

## VI.

■ Appellant's tenth point of error alleges that the trial court erred in failing to instruct the jury on the requested definition of "deliberately." This Court has previously addressed the issue of defining "deliberately" and held no definition is required. We decline to reconsider the issue here. *Lewis v. State,* 815 S.W.2d 560, 563 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1991), and cases cited therein.

## VII.

In the eleventh, twelfth, and thirteenth points of error, appellant contends that the Texas capital murder statute is unconstitutional on its face and as applied. He claims a violation of the Eighth Amendment of the U.S. Constitution based upon the trial court's failure to submit an additional instruction that takes into account appellant's mitigating evidence.

■ This Court addressed appellant's facial challenge to the Texas statutory sentencing scheme recently in *Lewis v. State.* We opined:

It is plain from a reading of *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) and *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) that the statutory method of assessing the death penalty in Texas can be administered in a manner consistent with the Eighth Amendment of the United States Constitution. Whether it is so administered in fact depends upon the circumstances of individual cases. But, in any event, the capital sentencing procedure is not itself unconstitutional for its failure to provide

for jury consideration of mitigating evidence.

815 S.W.2d at 567. The central question in analyzing the constitutionality of the Texas statutory scheme is the application of the capital sentencing procedure, and whether the special issues sufficiently allow for the jury to consider any mitigating evidence.

Appellant directs this Court's attention to the following mitigating evidence in support of his constitutional challenge:

1) evidence of lack of violent behavior towards other persons,

2) evidence that he was a hard worker at his last place of employment,

3) testimony by his ex-wife that he was non-violent,

4) and testimony from an expert witness specifically challenging the state expert's ability to predict future dangerousness.

The evidence of appellant's non-violent behavior and the evidence that he is a hard working individual are mitigating in nature. However, the mitigating effect of such evidence can be considered within the second special issue. *See Mooney v. State,* 817 S.W.2d 693, 705–6 (Tex.Crim.App.1991); *Boyd v. State,* 811 S.W.2d 105, 111 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991); *Ex Parte Baldree,* 810 S.W.2d 213 (Tex.Crim.App. 1991); *Ex Parte Ellis,* 810 S.W.2d 208, 211 (Tex.Crim.App.1991). On the other hand, the evidence from appellant's expert witness is not in itself mitigating evidence, but rather a challenge to the credibility or the weight of the State's expert witness. The jury could consider any *mitigating* effect of the testimony in assessing the weight or credibility of the State's expert in the consideration of the special issue. Accordingly appellant's points of error are overruled.

## VIII.

■ In the fourteenth point of error, appellant contends the trial court committed fundamental error by failing to charge the jury on the issue of provocation as required by Tex.Crim.Proc.Code Ann. Art. 37.071(b) (West 1988), which states:

On conclusion of the presentation of the evidence, the court shall submit the fol-

lowing three issues to the jury: ... (3) If raised by the evidence, whether the conduct of the defendant in killing the deceased was reasonable in response to the provocation, if any, by the deceased.

The third special issue must be given if raised by the evidence. *Robinson v. State*, 851 S.W.2d 216 (Tex.Crim.App.1991), *reh'g granted on other grounds*, (July 3, 1991). In support of his argument that it was raised by the evidence, appellant points to the testimony of Mr. Ferguson who testified he heard five to seven shots fired. Because appellant's .44 magnum revolver only held six shots, appellant asks us to infer that one of the victims fired *first*, and in such a manner that it provoked appellant to shot him. Such is more in the nature of speculation than a permissible inference, especially since all the evidence indicates quite to the contrary that in fact appellant initiated the violence. Appellant additionally points to the testimony of Terry Johnson in support of his contention that a gun fight ensued. However a more careful reading of Terry's testimony supports the contrary. Terry testified during the defense's direct examination that appellant told him that "as soon as he hit [Hazelton] he fired a shot at him, Hazelton boy fired a shot at him as he was going down." Additionally, Terry testified that when they heard the approaching truck, Terry told appellant that they were going to get caught. Appellant replied, "the only thing we can do is shoot it out with them." None of the evidence presented raises an inference that appellant was provoked into shooting Hazelton. No error was committed by the trial court's failure to *sua sponte* charge the jury on the third special issue. Appellant's fourteenth and final point of error is overruled. The judgement of the trial court is affirmed.

BAIRD and MALONEY, JJ, concur in the result.

CLINTON, Judge, dissenting.

Appellant presented evidence that he is not a man of violent character, that he neither drinks nor takes drugs, and that he was a diligent employee respectful of his coworkers. These character traits do not fall squarely within the ambit of *Penry v. Lynaugh*, supra, and they obviously carry little weight as mitigating evidence with the majority today. Nevertheless, it is not plain to me that jurors would find these facets of appellant's character insignificant in making the normative evaluation whether he deserves to live in spite of his crime. The Supreme Court has not expressly limited its view of "relevant" mitigating evidence to those circumstances necessarily bearing on personal culpability for the particular offense committed or those aspects of the defendant's background or makeup to which his crime may be, at least in part, attributable. See *Skipper v. South Carolina*, 476 U.S. 1, at 4–5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1, 7 (1986). To the contrary, there is every indication a majority of the Supreme Court believes "[e]vidence of voluntary service, kindness to others, or of religious devotion" to be relevant inasmuch as it "might demonstrate positive character traits that might mitigate against the death penalty." *Franklin v. Lynaugh*, 487 U.S. 164, at 186, 108 S.Ct. 2320, at 2333, 101 L.Ed.2d 155, at 173 (1988) (O'Connor, J., concurring). Appellant's proffered evidence was of the same ilk. Because jurors in this cause were precluded from effectuating that evidence beyond the scope of special issues under Article 37.071, § (b), V.A.C.C.P., appellant has been sentenced to death in contravention of the Eighth Amendment. His conviction should be reversed and remanded for new trial. Article 44.29(c), V.A.C.C.P.

I also disagree with the majority's treatment of appellant's first point of error. Article 38.14, V.A.C.C.P., reads substantially as it has read since originally promulgated as Art. 653 of the Old Code, *viz:*

> "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The majority concludes that a defense witness may not be considered an accomplice for purposes of this statute, and thus con-

cludes the trial court did not err in failing to submit appellant's requested instruction at the conclusion of the guilt phase of trial. In this I believe the majority errs.

It is true that in relatively recent years the Court has said that, e.g., "Article 38.14, supra, is not construed to require corroboration of a witness called by the accused. *Brown v. State*, 476 S.W.2d 699 (Tex.Cr. App.1972); *Davis [sic] v. State*, 162 Tex. Cr.R. 280, 284 S.W.2d 713 (1955)." *Jenkins v. State*, 484 S.W.2d 900, at 902 (Tex. Cr.App.1972). Reasoning from this proposition, the Court later concluded that any testimony offered by an accused "is not that of an accomplice witness." *Cranfil v. State*, 525 S.W.2d 518, 520 (Tex.Cr.App. 1975); *Aston v. State*, 656 S.W.2d 453, 455 (Tex.Cr.App.1983). All of these holdings seem to me to derive from a misunderstanding of earliest holdings construing predecessors to Article 38.14, supra.

In *Joseph v. State*, 34 Tex.Cr.R. 446, 30 S.W. 1067 (1895), the decomposed body of a newborn was found in a cistern, and Joseph was charged with infanticide. Marie Nicholas, a woman with whom Joseph was "engaged in the business of peddling," testified that:

"she gave birth to the child; that she did so in a privy on the premises; that, after its birth, it uttered a cry, and she took it up, and it immediately died; and that by herself, without any knowledge on the part of any person, she disposed of it in the cistern."

*Id.*, 30 S.W. at 1068. The trial court gave an accomplice witness instruction pursuant to then Article 741 of the 1879 Code of Criminal Procedure. After quoting the statute, this Court observed:

"If there was a crime committed in this case, certainly Marie Nicholas was an accomplice. She was not introduced by the state as a witness, and all her testimony was in favor of the defendant; and yet the jury were told that, if the state relied for a conviction in any measure upon her testimony, they were to discred-

it it to the extent of requiring its corroboration before they would be authorized to convict. While this might be true as an abstract proposition, yet, without a pertinent charge telling the jury in this connection that the same rule did not apply to said witness where her testimony was in favor of the defendant, it was liable to mislead and confuse the jury, and to discredit said witness when they should come to consider her testimony. Under such a charge they were liable to regard the same rule applicable to the state as equally applicable to the defendant, and to require that she be corroborated before they would be authorized to acquit the defendant upon the testimony of said witness alone. We believe that the charge was erroneous as to said witness."

*Id.*, 30 S.W. at 1068–69. A year later, in *Williams v. State*, 37 S.W. 325 (Tex.Cr. App.1896), the accused appealed his conviction for incest. "The appellant proposed to prove by his said daughter, in substance, that at no time had he ever had carnal intercourse with her." He sought a continuance to obtain her presence, and in the process of holding it should have been granted, the Court opined:

"The law does not require the testimony of an accomplice to be corroborated, when given for the accused. The statute forbids conviction upon the testimony of an accomplice, unless corroborated, but does not require such testimony to be corroborated when given for the accused."

*Id.* Thus, the Court indicated that when an accomplice witness testifies purely to facts favorable to an accused, an instruction pursuant to the statute, without qualification, would be error inasmuch as it might lead the jury to believe, contrary to the law, that an accomplice witness's testimony must be corroborated not only before it may support a conviction, but also before it may support an acquittal.[1] That is to say,

---

1. Prior to this Court's decision in *Daviss v. State,* 162 Tex.Cr.R. 280, 284 S.W.2d 713 (1955), see text *post,* the rule was stated in the second edition of Branch's as follows:

"When an accomplice testifies for the defendant it is error to charge that if the State relies for a conviction in any measure upon his testimony it must be corroborated, *if the*

a jury must not be misled to believe that testimony from an accomplice that exculpates an accused need also be corroborated under the statute.

Two points must be noted. First, the Court did not hold in these cases that a witness called by the defendant to give exculpatory testimony cannot be considered an accomplice. Quite the contrary, both *Joseph* and *Williams* identify the defense witness as an accomplice, "[i]f there was a crime committed" at all. Second, by "given for the accused," the Court did not mean simply that the testimony was proffered during the defendant's presentation of evidence, but that the testimony was exculpatory, admitted solely in an effort to persuade the jury to acquit, not to convict, as would be impermissible *sans* corroboration under the statute. These cases do not address the question whether the statute requires corroboration of an accomplice who is called by the defendant, but gives testimony upon which the jury could rationally rely to convict. Facially, the statute would appear to require corroboration in the premises, for it contains no express or implicit qualification based upon which party sponsors the accomplice witness.

Nevertheless, on opinion on appellant's motion for rehearing in *Daviss v. State*, 162 Tex.Cr.R. 280, 284 S.W.2d 713, at 714 (1955), the Court held that inculpatory testimony from an accomplice witness, when the witness is proffered by the accused, need not be corroborated under the statute. Without further elaboration, the Court simply cited *Joseph* and *Williams*, both supra, and concluded that no corroboration was required because the testimony at issue had been "given for the accused." The holding of *Daviss* was uncritically accepted and expanded in *Jenkins, Cranfil,* and *Aston,* all supra, to the point that we now say that no witness called by an accused can be an accomplice at all. It seems to me these cases thwart the very purpose of Article 38.14, supra.

Frequently the State must offer an accomplice immunity or leniency in order to induce him to forego constitutional privileges against self-incrimination and testify. There is reason to mistrust testimony of an accomplice under those circumstances, for he has every incentive to fabricate, or to downplay his own involvement in the offense to the detriment of the accused. He wants to appease the State and "to save his own skin." But suppose an accused can prove some exculpatory fact through no means other than the testimony of an accomplice who otherwise has an abundance of inculpatory testimony to give. If the State declines to call that witness, must the accused suffer loss of the benefit of Article 38.14, supra, simply because he must rely on that witness for partial exculpation? An accomplice witness willing to relinquish his testimonial privilege without benefit of a deal with the State, willing to establish some small point in favor of the accused because it does not concomitantly incriminate him, may nevertheless harbor strong incentive to inculpate an accused in other aspects to deemphasize his own involvement in the crime. As to those inculpatory aspects of his testimony, the same reasons exists to mistrust his testimony as had the State itself called the accomplice. Moreover, in this cause Terry Johnson had worked out a plea agreement with the State in exchange for testimony at appellant's trial. That the State then declined to call him in its case-in-chief does not relieve the pressure he was under to testify in such a way as to appease the State. Under such circumstances "the aura of distrust" does not lift simply because appellant himself called the witness to the stand.

I cannot imagine a rationale for holding that an accomplice witness called by an accused who gives inculpatory testimony is not subject to the statutory corroboration requirement, unless it is a remnant of the "voucher" notion—that a party is bound to the testimony of the witnesses he presents, and any grounds for mistrust must fall

---

*charge omits to also inform the jury that the same rule does not apply to his testimony given in favor of the defendant."* (Emphasis added.)

2 Branch's Annotated Penal Code, § 744 (2d ed. 1956).

away. This "voucher" requirement has been largely discredited on the sensible ground that a party must take his witnesses as he finds them. See 3A Wigmore, Evidence, Chadbourn rev. 1970, § 898; McCormick, Evidence, Cleary ed. 1984, § 38. Accordingly, Rule 607 of the Federal Rules of Evidence has abandoned the former common law prohibition against a party impeaching its own witness, at least on its face.[2] Except for the gender-neutral terminology in the current federal rule, our Tex.R.Cr.Evid., Rule 607 is identical to its federal counterpart. Having abandoned "voucher" in the context of impeachment, I can see no compelling reason that we should cling to it in the context of construing the corroboration requirement of Article 38.14, supra. I would therefore hold the trial court erred in failing to give the requested instruction.[3]

Although the majority correctly disposes of appellant's remaining points of error, a few bear further comment. In his seventh, eighth, and ninth points of error appellant alleges the trial court erred in instructing the jury at the punishment phase of trial that it must find appellant either "solely caused the death" of the two victims, or else "contemplated" that they would be killed. In my view this instruction was not only not erroneous, it was probably necessary if a sentence of death was to pass Eighth Amendment muster in this cause.

In *Cuevas v. State*, 742 S.W.2d 331, 343 (Tex.Cr.App.1987), the Court held that the first special issue alone is sufficient to meet the demands of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). I do not believe that invariably to be the case, however.

We have held that when a jury convicts a capital accused as a party under the provisions of V.T.C.A. Penal Code, § 7.02(a)(2), the verdict of guilty entails a sufficient finding under *Enmund* and *Tison*, both supra. See *Webb v. State*, 760 S.W.2d 263, at 268–69 (Tex.Cr.App.1988); *Tucker v. State*, 771 S.W.2d 523, at 530 (Tex.Cr.App. 1988). This is so because:

"before the accused may be found criminally responsible for the conduct of another who 'intentionally commits the murder,' under the provisions of V.T.C.A. Penal Code, § 7.02(a)(2), it must be shown the accused harbored a specific 'intent to promote or assist the commission of' the intentional murder the other

---

2. Caselaw requirements of "surprise" and "damage" as prerequisites to impeaching one's own witness are conspicuously absent from Federal Rule 607. These requirements were designed to protect against a party calling a witness he knows will testify adversely to his cause solely so that he might introduce as "impeachment" a prior inconsistent statement of that witness, hoping the jury will consider the statement for its substantive content, the hearsay rule notwithstanding. The drafters of Federal Rule 607 dispensed with this problem by "proposing a definition of hearsay which excluded prior inconsistent statements, thereby making such evidence admissible for all purposes." 27 Wright & Gold, Federal Practice and Procedure: Evidence § 6091 (1990), at 483. Because by this scheme prior inconsistent statements were to be admitted for any purpose, there would no longer exist an incentive to present a witness solely to "impeach" him with one, and the necessity for showing surprise and damage as a prerequisite to impeachment of one's own witness would disappear. "Unfortunately, ... Congress would reject Rule 801 as proposed and greatly limit the class of prior inconsistent statements that may be considered 'not hearsay.' Congress made no

effort to revise Rule 607 in light of the changes made to Rule 801(d)(1)(A)." *Id.* Commentators and federal courts have struggled with the question of whether, and if so how, to read "surprise" and "damage" requirements back into Rule 607, in view of the fact that prior inconsistent statements are still considered inadmissible hearsay. *Id.*, § 6093, at 496–515. Because Tex. R.Cr.Evid., Rule 801(e)(1)(A) echoes Federal Rule 801(d)(1)(A), presumably this Court will eventually confront a similar problem.

3. One of appellant's other brothers testified during the State's case-in-chief that appellant had admitted to him facts that were substantially the same as those Terry Johnson later testified to, insofar as they inculpated appellant. Under these circumstances the Court has held under earlier incarnations of Article 36.19, V.A.C.C.P., that failure to give an accomplice instruction "was not calculated to injure the rights of the defendant...." *Saucier v. State*, 156 Tex.Cr.R. 301, 235 S.W.2d 903, at 909–910 (1951), and cases cited therein. Because I believe that it was reversible error not to give appellant's requested mitigation instruction, I need not address the question of harm.

committed. *Meanes v. State,* [668 S.W.2d 366,] at 375–76 [ (Tex.Cr.App. 1983) ]; *Rector v. State,* 738 S.W.2d 235, 244 (Tex.Cr.App.1986); See also *Martinez v. State,* 763 S.W.2d 413, 420 n. 5 (Tex.Cr.App.1988). One could hardly indulge an intent to promote or assist in the commission of an intentional murder without, at a minimum, intending or contemplating that lethal force would be used. In short, that the jury may not have believed [a capital accused] pulled the trigger of the actual murder weapon is of no moment. Because it was required to find an intent to promote or assist commission of *an intentional murder* before the jury could convict [him] as a party to the offense in the first instance, we cannot say its later punishment verdict was 'fatally defective' under *Enmund.*" [4]

*Webb v. State,* supra. The same cannot be said where the jury may have reached a verdict of guilty relying upon a conspiracy theory of parties under V.T.C.A. Penal Code, § 7.02(b). That provision reads:

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

Under § 7.02(b), supra, a jury could convict a capital accused upon no more than a finding that the killing "should have been anticipated as a result of the carrying out of the conspiracy." That a result "should have been anticipated" does not necessarily mean a capital accused did in fact intend or contemplate it, or even that he harbored "the reckless indifference to human life implicit in knowingly engaging in criminal activities *known* to carry a grave risk of death." *Tison v. Arizona,* 481 U.S. at 157, 107 S.Ct. at 1688, 95 L.Ed.2d at 144. A guilty verdict premised upon § 7.02(b), su-

pra, will not meet the dictates of *Enmund* and *Tison.*

Furthermore, the first special issue will also prove insufficient to ensure that *Enmund* and *Tison* have been met where a capital accused has been convicted under a conspiracy theory of parties. The jury is to focus on "the conduct of the defendant that caused the death of the deceased" under Article 37.071(b)(1), V.A.C.C.P. When a capital defendant has been found guilty as a party under § 7.02(a)(2), supra, we have construed Article 37.071(b)(1), supra, to require that what must be scrutinized for deliberateness is not the conduct of the primary actor which directly caused the death, but the conduct of the defendant by which he solicited, aided, encouraged or directed that killing. *Meanes v. State,* supra, at 375–76; *Martinez v. State,* supra, at 420, n. 5. Analogously, unless we are to hold that the law of parties does apply at the punishment phase of a capital case— something we expressly declined to do in *Green v. State,* 682 S.W.2d 271 (Tex.Cr. App.1984)—then what must be shown to have been deliberate on the part of a capital accused found guilty under § 7.02(b), supra, is his conduct as a conspirator. But again, because that is conduct which may have been committed without actual anticipation that death would result, application of the first special issue in this context may not satisfy *Enmund* and *Tison* after all.

Thus, the instruction given in this cause, that if the jury finds appellant himself was not the triggerman it must find at least that he "contemplated" that death would result, may very well have been necessary to render any sentence of death imposed as a consequence of the jury's answers to special issues valid under the Eighth Amendment. Appellant contends the instruction operated to lessen the State's burden of proof on the issue of his deliberateness, in violation of due process and due course of law. But the only finding of deliberateness required by Article 37.-071(b)(1), supra, focuses on appellant's conduct as a conspirator in the underlying felony. Requiring a finding for purposes

---

4. Emphasis in the original.

of the Eighth Amendment that appellant at least "contemplated" that death would result as a consequence of carrying out the conspiracy only serves to increase the State's burden beyond that which the statute alone imposes, not to decrease it.[5]

For this reason I also agree with the majority's ultimate disposition of appellant's seventh, eighth, and ninth points of error. Nevertheless, because in my view the trial court erred in failing to give the requested *Penry* instruction, I respectfully dissent.

---

**5.** Whether the instruction given here is authorized or even permitted under Article 37.071, supra, is quite another question, cf. *State v.* *Wagner,* 309 Or. 5, 786 P.2d 93 (1990), but one which appellant does not now raise.