TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00484-CR






Hope L. Gonzales, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT


NO. CR95-327, HONORABLE BILL BENDER, JUDGE PRESIDING







 A jury found appellant guilty of unlawfully appropriating more than $20,000 but
less than $100,000 from Alphonse Laubach without his effective consent. See Tex. Penal Code
Ann. § 31.03(a), (b)(1) (West 1994). She was sentenced to ten years probation and a $10,000
fine. Appellant raises four issues on appeal. She argues that: (1) the evidence was legally and
factually insufficient to support the jury's finding that Mr. Laubach could not give effective
consent due to his diminished capacity to dispose of his property; (2) the evidence was legally and
factually insufficient to support the jury's finding that appellant appropriated Mr. Laubach's
property; (3) the term "diminished capacity" in Texas Penal Code section 31.01(3)(E) is over-broad and undefined in violation of the Due Process Clause of the Fourteenth Amendment to the
U.S. Constitution and the Due Course of Law Clause of the Texas Constitution; and (4) the trial
court erred by failing to include definitions for "mental capacity" and "diminished capacity" in
its charge. We will affirm the conviction.


STATEMENT OF FACTS

 Alphonse Laubach suffered a stroke in late November 1994. Prior to the stroke,
Mr. Laubach took care of his wife, who suffered from Alzheimer's disease, in their home. 
Appellant was a neighbor and long time acquaintance of the Laubachs' who cared for elderly
people in her home. Because the immediate impact of the stroke left Mr. Laubach physically and
mentally impaired, the Laubachs' daughter, Rosemary Krickbaum, moved her parents into
appellant's home on December 2, 1994. For a monthly fee of $3,000, appellant supplied a room
and meals for the Laubachs, made sure Mr. Laubach took his medications properly, and took care
of Mrs. Laubach's personal hygiene. Home health care nurses came to appellant's home
approximately three times a week to check on Mr. Laubach.

 Mr. Laubach regained most of his physical strength within a few months, but he
continued to have difficulty speaking. In March 1995, Mr. Laubach's neurologist, Dr. Wayne
Gordon, determined that Mr. Laubach's stroke left him with receptive and expressive aphasia. 
Dr. Gordon testified that an individual suffering from aphasia has difficulty manipulating symbols,
such as words; receptive aphasia impairs one's ability to understand what is being said, while
expressive aphasia impairs one's ability to communicate an appropriate response. Dr. Gordon
explained that the symptoms of aphasia can wax and wane. Ms. Krickbaum testified to her
father's occasional inability to communicate; she explained that some days he could not form
words and appeared agitated at his inability to communicate, and he sometimes said "no" when
he meant "yes" and vice versa. Appellant saw Mr. Laubach daily. Ms. Krickbaum testified that
appellant often told her that Mr. Laubach was "confused."

 Because of her parents' conditions, Ms. Krickbaum took control of their personal
affairs. She and her husband looked after the Laubachs' ranch; she also kept track of their mail,
kept physical control of their checkbook, and wrote out checks for Mr. Laubach to sign as bills
came due. After she became one of the authorized names on their checking account, Ms.
Krickbaum signed the checks in front of her father as she explained which bills were being paid. 
Ms. Krickbaum testified that in April 1995, Mr. Laubach expressed his desire to have physical
control of the checkbook, and Ms. Krickbaum returned the checkbook to him. She explained that
she still assisted her father with the bills as they came due.

 In the early part of June 1995, appellant called Ms. Krickbaum and asked how to
handle a $1,000 check that Mr. Laubach had made payable to appellant. Evidence at trial
established that Mr. Laubach was normally very frugal; knowing that spending money
unnecessarily was out of character for her father, Ms. Krickbaum questioned him about the check. 
Ms. Krickbaum testified that Mr. Laubach couldn't respond to her questioning about the check and
seemed "bewildered." Ms. Krickbaum never located that check, and she eventually stopped
payment on it.

 On Friday, June 23, Ms. Krickbaum visited her father and noticed a blue Lincoln
Town Car in appellant's driveway. Ms. Krickbaum testified that when she asked appellant if she
had purchased a new car, appellant said that the car belonged to her son. On the morning of
Monday, June 26, Ms. Krickbaum received a call from Billie Brimmage, an employee at Victoria
Bank and Trust in New Braunfels, who informed her that Mr. Laubach and appellant had been at
the bank that morning and Mr. Laubach had attempted to withdraw an undetermined sum of
money. Ms. Brimmage had refused the withdrawal because Mr. Laubach wasn't able to
communicate with her. The phone call from Ms. Brimmage prompted Ms. Krickbaum to
investigate, and she discovered that Mr. Laubach had recently withdrawn large sums of money
from his accounts.

 Ms. Brimmage explained the events surrounding a few of Mr. Laubach's
transactions. She testified that on June 19 she met with Mr. Laubach, who was accompanied by
appellant, at Victoria Bank and Trust. Mr. Laubach requested $20,000 from a certificate of
deposit ("CD") that had not yet matured. Ms. Brimmage told Mr. Laubach that there would be
a large penalty for early withdrawal, and he indicated that he would rather wait for the CD to
mature so that he could avoid the penalty. Appellant then asked if she could speak to Mr. Laubach
privately; appellant and Mr. Laubach went into the safe deposit viewing room for about five
minutes. When they returned, Mr. Laubach stated that he needed the money that day, and despite
the penalty he withdrew $20,000 in cash. On June 23, Mr. Laubach, again accompanied by
appellant, went to Victoria Bank and Trust and made a withdrawal of $10,000 from his money
market fund in the form of a cashier's check payable to North Park Lincoln Mercury. Ms.
Brimmage observed this transaction although she did not speak to Mr. Laubach.

 On the morning of June 26, the day Ms. Brimmage contacted Ms. Krickbaum, Mr.
Laubach and appellant visited Victoria Bank and Trust once again. Ms. Brimmage testified that
Mr. Laubach seemed disoriented and was unable to explain what he wanted, and that appellant
prodded Mr. Laubach to tell Ms. Brimmage why he had asked appellant to take him to the bank but
he could not respond. Ms. Brimmage was concerned about Mr. Laubach's condition and asked
appellant about Mr. Laubach's relatives, but appellant told Ms. Brimmage that she could not
remember Mr. Laubach's daughter's name. Mr. Laubach attempted to write his daughter's name for
Ms. Brimmage on a post-it note but could not write or remember the name correctly. He finally
showed Ms. Brimmage a checkbook from another bank that listed Ms. Krickbaum on the account. 
Ms. Brimmage wrote down Ms. Krickbaum's name and told Mr. Laubach that she was not going to
complete a transaction for him until he got better. After Mr. Laubach and appellant left, Ms.
Brimmage found Ms. Krickbaum's telephone number and contacted her.

 Following Ms. Brimmage's call, Ms. Krickbaum and other members of her family
went to appellant's home to question appellant about the withdrawn money and the car. When
they arrived, they were startled to find that Mr. Laubach's condition was worse than when they
had last seen him. In response to their questions about Mr. Laubach's condition, appellant
responded that she thought he had suffered a few "little strokes" over the weekend, though she
had never contacted any of his family members or taken him to a doctor. When questioned about
the cash withdrawn from the CD, appellant indicated that Mr. Laubach had it when she brought
him back to her house and denied knowing what happened to the money after that. The money
has never been located. When asked about the blue Lincoln Town Car, appellant produced a
statement that had been notarized earlier that day by the Bulverde Justice of the Peace in which
Mr. Laubach stated that he was giving "this car" to appellant. Ms. Krickbaum removed her
parents from appellant's home that evening.

 Ms. Krickbaum later learned that on June 24, the day after Mr. Laubach paid
$10,000 from his Victoria Bank and Trust account to North Park Lincoln Mercury, he signed a
$14,634.20 personal check from his checking account at Bank of America, made payable to North
Park Lincoln Mercury. Ms. Krickbaum testified that only the signature on the check was in Mr.
Laubach's handwriting. Mr. Laubach withdrew $1,000 cash from this same account on June 15.

 Appellant was subsequently indicted for aggregated theft over $20,000 but less than
$100,000; the amounts listed on the indictment were the $1,000 cash withdrawn June 15, the
$20,000 withdrawn from the CD, the $10,000 cashier's check, and the $14,634.20 personal check.
The State alleged that appellant committed the theft by unlawfully appropriating Mr. Laubach's
property without his effective consent, and that his consent was not effective because it was given
by a person "of advanced age who was known by the Defendant to have a diminished capacity to
make informed and rational decisions about the reasonable disposition of property." See Tex.
Penal Code Ann. §§ 31.01(3)(E), .03(b)(2) (West 1994). A jury convicted appellant; this appeal
followed. 


DISCUSSION

Legal and Factual Sufficiency of the Evidence

 In her first issue, appellant argues that the evidence presented at trial was legally
and factually insufficient to prove that Mr. Laubach had "diminished capacity" such that he was
unable to make informed and rational decisions about the disposition of his property. In reviewing
the legal sufficiency of the evidence, the standard is whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). Any inconsistencies in
the evidence should be resolved in favor of the verdict. See Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). Furthermore, the standard of review is the same for both direct and
circumstantial evidence. See Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

 When conducting a review of the factual sufficiency of the evidence, an appellate
court does not view the evidence in the light most favorable to the prosecution. Rather, all of the
evidence is considered equally, including the testimony of defense witnesses and the existence of
alternative hypotheses. See Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no
pet.). The court, however, does not substitute its judgment for that of the jury, and should set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996);
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). 
Furthermore, the appellate court may not reverse a jury's decision simply because it disagrees with
the result. See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

 It was essential to appellant's conviction that the jury find beyond a reasonable
doubt that appellant knew that Mr. Laubach had a diminished capacity to make informed and
rational decisions about the reasonable disposition of his property. As set out above, the evidence
established that Mr. Laubach suffered from ongoing receptive and expressive aphasia. Dr.
Gordon testified that he believed that Mr. Laubach was impaired in his ability to make reasonable,
rational decisions because of his aphasia and that someone who saw Mr. Laubach frequently, such
as appellant, should have known this. Dr. Burns, a geriatric psychiatrist who examined Mr.
Laubach after the State indicted appellant, testified that "anyone involved with this gentleman"
would have known that Mr. Laubach had a diminished capacity. Furthermore, Ms. Krickbaum
testified that appellant often characterized Mr. Laubach as being "confused." Viewing the
evidence in the light most favorable to the prosecution, we conclude that a rational fact-finder
could have found beyond a reasonable doubt that Mr. Laubach suffered from a diminished capacity
to make rational decisions about his property and that this was known by appellant.

 The record does contain some evidence that Mr. Laubach was somewhat lucid when
he engaged in his financial transactions. For example, Ms. Brimmage testified that he seemed to
understand that a penalty would be assessed for early withdrawal of his CD. Furthermore, the
Bulverde Justice of the Peace testified that Mr. Laubach came to his office with appellant and
appellant told him that they wanted to get a document notarized. The judge noticed that Mr.
Laubach had a speech impediment, but believed that Mr. Laubach had the capacity to sign the
document giving the car to appellant and that Mr. Laubach did so voluntarily. Several other
witnesses testified that they spoke with Mr. Laubach at appellant's home on various occasions and
that he was able to communicate with them. Although appellant argues that this evidence proves
that some people did not think Mr. Laubach had a diminished capacity, she fails to recognize that
the proper inquiry is whether she knew that Mr. Laubach had a diminished capacity. 
Furthermore, even if this evidence conflicts with Ms. Krickbaum's testimony that appellant often
stated that Mr. Laubach was "confused," it is up to the jury to resolve conflicts in the evidence. 
See Miranda v. State, 813 S.W.2d 724, 733-34 (Tex. App.--San Antonio 1991, pet. ref'd). After
considering all of the evidence equally, we conclude that the jury's determination that appellant
knew Mr. Laubach suffered from a diminished capacity to reasonably dispose of his property did
not result in a verdict so contrary to the overwhelming weight of the evidence as to be clearly
wrong or unjust.

 In appellant's second issue, she complains that the evidence was legally and
factually insufficient to prove that she appropriated Mr. Laubach's property. The trial court
instructed the jury that "'[a]ppropriate' means to acquire or otherwise exercise control over
property other than real property." See Tex. Penal Code Ann. § 31.01(4)(B) (West 1994)
(defining the verb "appropriate"). 

 The evidence established that a $10,000 cashier's check from Mr. Laubach's
Victoria Bank and Trust account was made payable to North Park Lincoln Mercury on June 23. 
On June 24 a personal check for $14,634.20 from Bank of America was made payable to the same
dealership. Ms. Krickbaum testified that on June 23, when she asked appellant about the blue
Lincoln Town Car parked in appellant's driveway, appellant said that it belonged to her son. 
Business records from North Park Lincoln Mercury, however, list appellant as the owner of a blue
Lincoln Town Car purchased on June 24, 1995, for the exact amount of $24,634.20. The
evidence at trial indicated that appellant exercised control over the vehicle from at least June 23
through June 26, 1995. Then, on June 26, after Ms. Brimmage refused to permit Mr. Laubach
to withdraw money because of his inability to communicate his wishes, appellant obtained a signed
statement from Mr. Laubach indicating that "this car" was a gift for appellant. 

 Appellant argues that the State did not prove that she appropriated over $20,000
because Ms. Krickbaum stopped payment on the $14,634.20 check payable to North Park Lincoln
Mercury. (1) We note that Ms. Krickbaum stopped payment on the check after appellant exercised
control over the vehicle. A rational fact-finder could have found beyond a reasonable doubt that
appellant "exercised control" over the Lincoln Town Car, which is property with a value in excess
of $20,000. We also find, based on all the evidence, that the verdict that appellant unlawfully
appropriated over $20,000 worth of property was not so contrary to the overwhelming weight of
the evidence as to be clearly wrong or unjust. Thus, we hold the evidence is legally and factually
sufficient to support the jury's verdict and rule against appellant on her first and second issues.


Constitutional Challenge

 In her third point of error, appellant argues that Texas Penal Code section
31.01(3)(E) is unconstitutionally vague. (2) The record reveals that this issue was not raised in the
trial court by objection or motion for new trial. The State contends, therefore, that appellant
waived her right to complain on appeal. See Tex. R. App. P. 33.1(a). Questions involving the
constitutionality of a statute upon which a conviction is based should be addressed by appellate
courts, even when such issues are raised for the first time on appeal. See Raab v. State, 730
S.W.2d 751, 752 (Tex. Crim. App. 1987). Therefore, we will address appellant's vagueness
issue.

 We begin with the presumption that the statute is valid and the legislature has not
acted arbitrarily or unreasonably in enacting it. See Ex parte Anderson, 902 S.W.2d 695, 698
(Tex. App.--Austin 1995, pet. ref'd). Furthermore, this Court must uphold the statute if a
reasonable construction can be ascertained that will render the statute constitutional and carry out
the legislative intent. See id. The burden rests on an individual challenging a statute to establish
its unconstitutionality. See id.

 A reviewing court must make a two-pronged inquiry in the examination of a
criminal statute for vagueness. See id. at 699. The first inquiry is whether an ordinary, law-abiding person receives sufficient information from the statute that his conduct risks violating the
criminal law. See id. The second inquiry involves a determination of whether the statute provides
sufficient notice to law enforcement personnel to prevent arbitrary or discriminatory enforcement. 
See id. Either of these inquiries forms an independent ground for a finding of vagueness. See id.

 Texas Penal Code section 31.01(3)(E) explains that consent is not effective if it is
"given by a person who by reason of advanced age is known by the actor to have a diminished
capacity to make informed and rational decisions about the reasonable disposition of property." 
Tex. Penal Code Ann. § 31.01(3)(E) (West 1994). Appellant's primary argument in support of
her vagueness challenge is that the term "diminished capacity" can include a broad range of
meaning. Appellant concludes, therefore, that the term must be defined in order to bring the
statute within constitutional parameters. We find appellant's argument unconvincing.

 A statute is not unconstitutionally vague merely because it fails to define words or
terms used. See Ex parte Anderson, 902 S.W.2d at 699. When words are not defined, they are
ordinarily given their plain meaning unless the statute clearly shows that they were used in some
other sense. See id. The words "diminished" and "capacity" are easily understood by a person
of ordinary intelligence. "Diminished" means "made less or decreased." Webster's Third New
International Dictionary 634 (Phillip B. Gove ed. 1986). One of the definitions of "capacity" is
"mental power, capability, and acumen blended to enable one to grasp ideas, to analyze and judge,
and to cope with problems." Id. at 330. Words that are defined in dictionaries and commonly
well known have been held not to be vague and indefinite. See Ex parte Anderson, 902 S.W.2d
at 700 (explaining that the term "sado-masochistic abuse" is neither vague nor indefinite). 
Furthermore, as appellant concedes in her brief, statutory words are to be read in context and
construed according to the rules of grammar and common usage. See Tex. Gov't Code Ann.
§ 311.011(a) (West 1998). The term "diminished capacity" is specifically tied to the ability of a
person of advanced age to make informed and rational decisions about the reasonable disposition
of property. See Tex. Penal Code Ann. § 31.01(3)(E) (West 1994). When read in context, and
construed according to rules of grammar and common usage, the term "diminished capacity" is
not unconstitutionally vague.

 Appellant has not overcome the presumed validity of the statute, nor has she
sustained her burden of showing the statute's unconstitutionality. When measured by its common
understanding and practices, the statute fairly apprizes appellant of the conduct it proscribes. 
Therefore, appellant has not been deprived of the due process of law under the Fourteenth
Amendment to the United States Constitution either as to a lack of fair notice or the
encouragement of arbitrary enforcement of the statute. (3) We overrule appellant's third issue.


Court's Charge

 In her final issue, appellant contends that the trial court erred in failing to define
the terms "mental capacity" and "diminished capacity" in its charge. Jury charge error must
normally be reviewed under the standard outlined in Almanza v. State, 686 S.W.2d 157 (Tex.
Crim. App. 1984). See Cormier v. State, 955 S.W.2d 161, 163 (Tex. App.--Austin 1997, no
pet.). In its examination of charge error, an appellate court must determine: (1) whether error
actually exists in the charge; and (2) whether there is any harm requiring reversal. See Almanza,
686 S.W.2d at 171. At trial, appellant did not object to the omitted definitions, nor did appellant
request that definitions of those terms be included in the charge. Therefore, appellant is required
to show that the error is so egregious and created such harm that she has not had a fair and
impartial trial. See id.

 Appellant argues, however, that the alleged error is not subject to Almanza analysis
because it is an "absolute rule violation requiring no harm analysis." Appellant relies on Reyes
v. State, 938 S.W.2d 718 (Tex. Crim. App. 1996). Reyes held that an instruction on "reasonable
doubt" is an absolute rule that cannot be waived or forfeited, and failure to submit such an
instruction is automatic reversible error. See id. at 721. Because omitting instructions for
common terms is not an absolute rule violation, we will review this case under the Almanza
standard.

 Where a word is a legal term of art, specifically defined by statute, a trial court
should include the statutory definition in its jury instructions where applicable. See Watson v.
State, 548 S.W.2d 676, 679 n.3 (Tex. Crim. App. 1977). That is not the situation presented here. 
Rather, "[w]here terms used are words simple in themselves and are used in their ordinary
meaning . . . such common words are not necessarily to be defined in the charge to the jury." 
Russell v. State, 665 S.W.2d 771, 780 (Tex. Crim. App. 1983), cert. denied, 465 U.S. 1073
(1984). Furthermore, when a term has not become so technical as to be considered a legal term
of art, the jury is entitled to give the term its common and ordinary meaning; failure to define the
term for the jury is not error. See Johnson v. State, 853 S.W.2d 527, 536 (Tex. Crim. App.
1992), cert. denied, 510 U.S. 852 (1993).

 The terms "mental capacity" and "diminished capacity" are not defined by statute,
nor has their usage become so complicated as to require them to be defined in a court's charge. 
The jurors were entitled to give these terms their ordinary meaning. Having found that the trial
court did not commit error in omitting definitions of these terms from its charge, it necessarily
follows that appellant has suffered no "egregious harm." We overrule appellant's fourth issue. 


CONCLUSION

 Having concluded the evidence presented at trial was both legally and factually
sufficient to support the jury's verdict, that Texas Penal Code section 31.01(3)(E) is not
unconstitutionally vague, and that the trial court did not commit error in its jury charge, we affirm
the judgment of the trial court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: January 28, 1999

Do Not Publish






* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The $20,000 cash Mr. Laubach withdrew from his CD has never been located, and there
was no direct evidence as to what happened to the $1,000 cash Mr. Laubach withdrew from his
Bank of America checking account. Although both of these withdrawals were part of the State's
indictment against appellant, the $10,000 cashier's check and the $14,634.20 personal check, both
payable to Town North Lincoln Mercury, are together sufficient to establish an aggregate theft of
more than $20,000 in property.
2. Appellant's point of error states that the statute is over-broad. In her brief, however,
appellant presents no argument to support her contention; rather, she argues solely that the statute
is unconstitutionally vague. Our analysis, therefore, will focus on the vagueness challenge.
3. Though appellant also argues that the statute violates the due course of law clause (Article
I, section 19) of the Texas Constitution, she has not developed this argument beyond the cursory
statement presented in her third issue. A state constitutional claim must provide a court with some
basis for the application of a constitutional test beyond that required of a federal constitutional
analysis. See Muniz v. State, 851 S.W.2d 238, 251-52 (Tex. Crim. App. 1993). Since appellant
has failed to do this, we decline to address the state constitutional portion of her third issue.



 id. at 721. Because omitting instructions for
common terms is not an absolute rule violation, we will review this case under the Almanza
standard.

 Where a word is a legal term of art, specifically defined by statute, a trial court
should include the statutory definition in its jury instructions where applicable. See Watson v.
State, 548 S.W.2d 676, 679 n.3 (Tex. Crim. App. 1977). That is not the situation presented here. 
Rather, "[w]here terms used are words simple in themselves and are used in their ordinary
meaning . . . such common words are not necessarily to be defined in the charge to the jury." 
Russell v. State, 665 S.W.2d 771, 780 (Tex. Crim. App. 1983), cert. denied, 465 U.S. 1073
(1984). Furthermore, when a term has not become so technical as to be considered a legal term
of art, the jury is entitled to give the term its common and ordinary meaning; failure to define the
term for the jury is not error. See Johnson v. State, 853 S.W.2d 527, 536 (Tex. Crim. App.
1992), cert. denied, 510 U.S. 852 (1993).

 The terms "mental capacity" and "diminished capacity" are not defined by statute,
nor has their usage become so complicated as to require them to be defined in a court's charge. 
The jurors were entitled to give these terms their ordinary meaning. Having found that the trial
court did not commit error in omitting definitions of these terms from its charge, it necessarily
follows that appellant has suffered no "egregious harm." We overrule appellant's fourth issue. 


CONCLUSION

 Having concluded the evidence presented at trial was both legally and factually
sufficient to support the jury's verdict, that Texas Penal Code section 31.01(3)(E) is not
unconstitutionally vague, and that the trial court did not commit error in its jury charge, we affirm
the judgment of the trial court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: January 28, 1999

Do Not Publish






* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The $20,000 cash Mr. Laubach withdrew from his CD has never been located, and there
was no direct evidence as to what happened to the $1,000 cash Mr. Laubach withdrew from his
Bank of America checking account. Although both of these wit