11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

D=Angelo Taylor           

Appellant

Vs.                   No. 11-01-00380-CR B Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted appellant of capital murder. 
TEX. PENAL CODE ANN. ' 19.03 (Vernon 1994).  Because
the State did not seek the death penalty, appellant was sentenced to
confinement for life.  TEX. PENAL CODE
ANN. ' 12.31 (Vernon 1994).  We affirm the conviction.

                                                                Background
Facts

Cory
Jones, an accomplice, testified that around 9 or 10 p.m. on May 4, 2000,
appellant had noticed a woman sitting in a green Explorer.  Appellant told Jones that he wanted to Ahit a lick,@ meaning commit a robbery. 
Appellant walked to the Explorer, pulled out a gun, and tapped the
driver=s side window with the gun.  Appellant demanded money from the driver,
the victim.  The victim  told appellant that she did not have any
money.  Appellant forced the victim into
the backseat of the Explorer and drove away. 
Jones rode in the backseat with the victim.  Appellant drove to a secluded place and switched places with
Jones.  Jones drove the car while
appellant sexually assaulted the victim. 
Appellant switched seats with Jones and drove to a secluded spot.  Appellant bound the victim=s arms behind her back with her shirt.  Appellant then pulled the victim out of the
vehicle and shot her in the head. 
Appellant and Jones dumped the victim=s naked body over a railing and covered it with a piece of plywood
lying nearby.  








Later that
night, appellant and Jones met two friends, and they all went to a restaurant.
One of the friends, Richard Allen Wilson, noticed blood on appellant=s shoes. 
Wilson asked appellant about the blood on his shoes, and appellant told
him that they had Ajacked
the woman that had the Explorer,@ that he also had had sex with the woman, and that he had shot her in
the head.  After eating, the four drove
to Jones=s sister=s house.  Appellant drove alone
in the Explorer; and Wilson, Jones, and a fourth person drove in another
vehicle.  While Jones and the others
went into the house, appellant drove the Explorer down a side road.  Later, appellant ran into the house with
burns on his body and clothes. 
Appellant told them that he had burned the Explorer on the train tracks.  

Early the
next morning, the police received a call regarding a vehicle on the railroad
tracks.  The police found the burning
Explorer.  On May 6, the police received
an anonymous call regarding the location of a body.  The police investigated and found the victim=s naked body with a gunshot wound to the
head.  The victim=s arms had been bound behind her back with a
shirt.

The
police, while investigating an unrelated crime, arrested Jones who told police
that he and appellant committed the murder in question.  Wilson, who was also arrested with Jones,
gave the police his statement and told them where appellant lived.  Later, the police arrested appellant.  After appellant=s indictment, the police obtained several
search warrants.  One of the warrants was
to search appellant=s
father=s apartment.   The police recovered a pair of bloodstained tennis shoes from
the apartment.  The tennis shoes
belonged to appellant.  The police later
matched the blood on the tennis shoes to the victim=s DNA. 
The police subsequently obtained a search warrant to obtain a DNA sample
from appellant.  Appellant=s DNA matched the sample from the rape
examination performed on the victim.  At
the time of the offence, appellant was 16 years old, and Jones was 17 years
old.

Appellant
presents ten points of error on appeal. 
The first seven points challenge the validity of two search
warrants.  The eighth and ninth points
of error contend that the trial court erred by admitting crime scene
photographs into evidence.  The last
point contends that the trial court abused its discretion in admitting the
testimony of Jones.

                                                      The
Apartment Search Warrant 








Appellant
lived with his father in the apartment where his bloodstained tennis shoes were
found.  Appellant complains in his first
point that the evidence collected pursuant to the search warrant of the
apartment should be excluded under TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon
Pamph. Supp. 2002) because it was illegally obtained under the Fourth and
Fourteenth Amendments of the United States Constitution and under Article I,
Section 9 of the Texas Constitution. 
Appellant contends that:  (1)
probable cause contained in the affidavit was obtained by an unlawful
warrantless search; (2) the affidavit did not reflect sufficient probable
cause; (3) the issuing judge was not a magistrate authorized to issue a search
warrant pursuant to TEX. CODE CRIM. PRO. ANN. art. 2.09 (Vernon Supp.
2002);  (4) the police exceeded the
authority of the warrant; and (5) the allegations contained in the warrant were
either intentionally false or were made with reckless disregard for the
truth.   We shall address each
contention in turn.[1]

The
affidavit consisted of six paragraphs, and the information contained in it
arises from the police investigation and from the voluntary statements given by
Wilson and Jones to the police.  There
is no evidence in the record to support appellant=s assertion that the information in the affidavit was obtained as a
result of an unlawful warrantless search. 


Appellant=s second complaint regarding the affidavit
supporting the warrant for the search of the apartment is that the warrant was
issued illegally because it failed to reflect sufficient probable cause.  More specifically, appellant alleges that
the affidavit failed to state sufficient underlying circumstances from which a
conclusion could be drawn that the evidence was at the location alleged and
that the affidavit failed to show the basis for believing that the informant
was credible or reliable.  








Probable
cause exists where the police have reasonable trustworthy information
sufficient to warrant a reasonable person to believe that a particular person
has committed or is committing an offense. 
Guzman v. State, 955 S.W.2d 85, 87 (Tex.Cr.App.1997).  The determination of the existence of
probable cause concerns the factual and practical considerations of everyday
life on which reasonable and prudent people, not legal technicians, act.  Guzman v. State, supra.  Probable cause deals with probabilities and
requires more than mere suspicion but far less evidence than is needed to
support a finding by a preponderance of the evidence.  Whether the facts alleged in a probable cause affidavit
sufficiently support a search warrant is determined by examining the totality
of the circumstances.  Ramos v. State,
934 S.W.2d 358, 362-63 (Tex.Cr.App.1996). 
The allegations are sufficient if they justify the conclusion that the
object of the search is probably on the premises.  Ramos v. State, supra. 
The magistrate is permitted to draw reasonable inferences from the facts
and circumstances alleged, and reviewing courts should accord great deference
to the magistrate=s
determination.  Ramos v. State, supra.

The
affidavit showed that the basis for the search was facts obtained from the
police investigation of the offense, including statements by co-defendant Jones
and  witness Wilson.  The statements made by  Jones and Wilson included details of the
offense that corroborated each other=s statements and what the police already knew about the case.  The affidavit showed that Jones admitted to
the police that he and appellant abducted the victim and that appellant shot
the victim in the head.  The affidavit
also showed that Wilson saw appellant and Jones driving the victim=s Explorer and that Jones admitted to Wilson
that the Explorer belonged to the victim. 
The affidavit showed how the police found the victim=s body and the victim=s burned Explorer.  The affidavit stated that appellant was arrested at the apartment
in question.  

Jones=s participation in the offense for which the
warrant was issued did not diminish his credibility.  See Janecka v. State, 937 S.W.2d 456, 464 (Tex.Cr.App.1996).  On the contrary, the Court of Criminal
Appeals has held that a statement by a source that includes an admission of
wrongdoing in the offense is indicative of credibility.  Janecka v. State, supra.  We believe that these facts were sufficient
for the magistrate to conclude that there was probable cause to believe that
appellant had murdered the victim and that the evidence sought would be found
where appellant was residing. 

Appellant=s third complaint regarding the validity of
the search of the apartment is that the issuing judge was not a magistrate
authorized to issue a search warrant pursuant to Article 2.09.  Article 2.09 states: 

Each of
the following officers is a magistrate within the meaning of this Code:  The justices of the Supreme Court, the
judges of the Court of Criminal Appeals, the justices of the Courts of Appeals,
[and] the judges of the District Court.

 








The search warrant for
the apartment was signed by District Judge Manny Alverez of the Criminal
District Court No. 5.  Pursuant to
Article 2.09, Judge Alverez was authorized to issue the warrant.        Appellant=s fourth complaint regarding the validity of
the search of the residence is that the officers exceeded the scope of the
warrant by seizing items not listed on the warrant.  The warrant specifically included Abloodied clothes, shoes.@  The record does not contain
any reference to any other items seized. 
The only evidence from the search used in the trial was the bloodstained
shoes.  The police did not exceed the
scope of the search warrant.

Appellant=s last complaint regarding the validity of
the search of the residence is that the allegations contained in the warrant
were either intentionally false or were made with reckless disregard for the
truth.  Appellant does not list which
allegations contained in the warrant were either false or were made with
reckless disregard for the truth, and we cannot find any allegations in the
affidavit supporting the warrant that are inconsistent with the record. 

We
overrule appellant=s
points of error relating to the apartment search warrant. 

                                                           Search
Warrant for DNA

Three
search warrants were issued to seek a sample of appellant=s DNA. The first warrant sought a buccal
swab.  Appellant filed a motion to
suppress, alleging that the affidavit supporting the warrant contained false
statements and resulted in an illegal seizure of evidence.  The State then prepared a second warrant,
seeking another buccal swab, that did not contain the allegations complained of
in the first warrant.  The second buccal
swab was inconclusive; therefore, a third warrant was issued seeking a blood
sample.  The results of the blood sample
were ultimately used at trial.  The
evidence from the first and second warrants was not used at trial.  At the hearing on the motion to suppress,
appellant contended that the subsequent warrants and evidence obtained thereby
were tainted as fruit of the Apoisonous tree.@  The trial court denied
appellant=s motion.   


Appellant=s complaint about the initial warrant for a
buccal swab is that:  (1) it was not
based upon probable cause; (2) the affiant knowingly and intentionally, or with
reckless disregard for the truth, included false statements in the affidavit in
support of the search warrant; and (3) the affidavit omitted critical
information to any probable cause determination.  Appellant=s only complaint about the second and third warrant is that they are Afruit of the poisonous tree.@ 








As to
probable cause, the affidavit stated that appellant had been arrested and
indicted by the grand jury for the murder of the victim.  Seminal fluid had been recovered from her
body during the autopsy and rape examination. 
A sample of appellant=s DNA was being sought to compare with the DNA from the seminal fluid
as well as the DNA from the bloodstained tennis shoes obtained from the search
of appellant=s residence. 
Given this information and making a realistic and common sense
interpretation of the affidavit and the reasonable inferences that could be
drawn from it, we hold that the magistrate did not err in finding that the
affidavit showed probable cause to support the warrant to take a DNA sample
from appellant.  See State v. Anderson,
917 S.W.2d 92, 96-98 (Tex.App. B Houston [14th Dist.] 1996, pet=n ref=d). 

Appellant=s second point about the warrant to collect a
DNA sample complains that the affiant knowingly and intentionally, or with
reckless disregard for the truth, included false statements in the affidavit in
support of the search warrant, making the affidavit misleading.  Citing Franks v. Delaware, 438 U.S. 154
(1978), appellant argues that information must be excluded from the affidavit
because:  (1)  the affidavit listed the wrong cause number and (2) the autopsy
report did not mention anything about sexual assault or seminal fluid being
recovered.  Appellant points out that
the affidavit states in part:  

I have
personally conducted a post arrest investigation into the May 6, 2000 Capital
Murder, which suspect Dangelo Taylor has been indicted in Cause No. F00-71708,
styled The State of Texas vs. Dangelo Taylor. 


 

It is undisputed that
Cause No. F00-71708 is unrelated to appellant. 
However, we hold that the cause number in this context is immaterial and
that its removal would not impact the finding of probable cause.  See Janecka v. State, supra at 464 (holding
that misstatements of the dates that information was obtained were immaterial
and not within the purview of Franks v. Delaware, supra). Appellant also
complains that the autopsy report did not mention anything about sexual assault
or seminal fluid being recovered. 
Officer Tony Robinson stated in his affidavit in pertinent part:

I have also talked to and read the reports of
Forensic Biologist Norma Garza and Forensic Lab Supervisor Dr. Tom Slider and
have determined from them the following: 

 








On May 7, 2000, an autopsy was performed by
Dr. David Dolinak, M.D. and determined that the cause of death was the result
of a gunshot wound to the head.  The
autopsy also disclosed that the complainant was sexually assaulted.  Seminal fluid was recovered from the
complainant=s body during autopsy and rape examination.
On May 17, 2000, Norma Garza, a Forensic Biologist at SWIFS, processed the rape
kit performed on the complainant.  She
confirmed seminal fluid was present.  I
personally spoke with Dr. Tim Slider, Phd. Supervisor of the Forensic DNA lab
at SWIFS.  He confirmed that seminal
fluid analyzed by his department was determined to have come from a male and
blood analyzed from the shoes to be that of human blood.

 

Officer
Robinson=s affidavit was based on the reports and his
conversations with the SWIFS[2]
personnel.  The autopsy report does not
mention sexual assault or seminal fluid being recovered, but the report does
mention a rape examination.  The affidavit
clearly stated that SWIFS personnel recovered seminal fluid.  The affidavit is materially correct and is
not misleading. 

Appellant=s last complaint about the search warrant for
a DNA sample is that the affidavit deliberately omitted information that there
was another suspect, Jones, who was charged with the offense.  This point was not presented to the trial
court; therefore, it was waived. 
However, even if the point was not waived, it is not relevant.  Appellant is arguing that probable cause
would not exist if the affidavit stated that Jones and appellant both
participated in the offense.  Including
a statement that Jones admitted participating in the offense with appellant
would not reduce but enhance the finding of probable cause.  See Janecka v. State, supra at  464. 
Appellant=s points of error regarding the DNA search
warrant are overruled.

Photographs 

In Points
of Error Nos. 8 and 9, appellant argues that photographs of the victim should
have been excluded under TEX.R.EVID. 403. The photographs showed the victim=s naked body from several angles as she
appeared after the piece of plywood covering her was removed.  Two of the photographs showed the victim=s body from the back after she had been
turned over to reveal the way her arms had been restrained.  The photographs accompanied Officer William
R. Knoble=s testimony.   








The
admission of photographs is within the sound discretion of the trial
court.   Ramirez v. State, 815 S.W.2d
636, 646-47 (Tex.Cr.App.1991).  The
trial court=s decision whether to admit or exclude
evidence in the face of an objection under Rule 403 will not be reversed unless
the trial court abused its discretion. 
Santellan v. State, 939 S.W.2d 155, 169 (Tex.Cr.App.1997); Montgomery v.
State, 810 S.W.2d 372, 389-91 (Tex.Cr.App.1991).  Photographs are generally admissible when verbal testimony as to
the matters depicted in the photographs is also admissible.  Emery v. State, 881 S.W.2d 702, 710
(Tex.Cr.App.1994), cert. den=d, 513 U.S. 1192 (1995); Hicks v. State, 860 S.W.2d 419, 426
(Tex.Cr.App.1993).  Several factors may
be considered in determining whether the danger of unfair prejudice
substantially outweighed the probative value of the photographs, including the
number of exhibits, their gruesomeness, their detail, their size, whether they
are black and white or color, whether they are close-up, whether the body is
naked or clothed, and the availability of other means of proof and the
circumstances unique to each individual case. 
Chamberlain v. State, 998 S.W.2d 230, 237 (Tex.Cr.App.1999), cert.
den=d, 528 U.S. 1082 (2000).

The
photographs were used by Officer Knoble to explain how the body was found.  The photographs also corroborated Jones=s testimony that the victim=s arms had been tied behind her back, that
appellant and Jones covered her body with plywood, and that she had been
shot.  When the power of visual evidence
Aemanates from nothing more than what the
defendant has himself done,@ a trial court does not abuse its discretion merely because it admitted
the evidence.  Accord Sonnier v. State,
913 S.W.2d 511, 519 (Tex.Cr.App.1995). 

The trial
court did not abuse its discretion in admitting the photographs.  Points of Error Nos. 8 and 9 are overruled.

                                                             Accomplice
Testimony

Appellant=s tenth point of error asserts that the trial
court erred by allowing Jones to testify because Jones=s testimony was motivated by the hope that it
would cause the State to be more lenient in Jones=s case.  Appellant contends that
the testimony was inherently tainted and should have been excluded.

Accomplice
testimony alone is insufficient to support a conviction and must be
corroborated by other evidence tending to connect the defendant with the offense
committed.  TEX. CODE CRIM. PRO. ANN.
art. 38.14 (Vernon 1979). 








There is
no doubt that Jones was appellant=s accomplice, and the jury was properly instructed as such.  Jones=s testimony was corroborated by Wilson=s testimony and by the physical evidence used at trial.  Wilson testified that he saw appellant and
Jones driving the victim=s Explorer and that appellant told him that they Ajacked the woman that had the Explorer.@  The
DNA test verified that appellant=s seminal fluid was found in the victim and that the victim=s blood was found on appellant=s tennis shoes.  Jones testified, both during direct examination and
cross-examination, about his motivation for testifying in this case.  Jones testified that he currently did not
have a deal with the State but that he hoped his testimony at appellant=s trial would help him. 

Appellant=s tenth point of error deals solely with the
credibility of the testimony at issue and, as such, was properly left to the
consideration of the jury.  Blake v.
State, 971 S.W.2d 451 (Tex.Cr.App.1998). 
We overrule appellant=s tenth point of error.

                                                                This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

TERRY
McCALL

JUSTICE

 

November 14, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.











     [1]Appellant does not explain how the protection offered
by the Texas Constitution differs from that of the United States
Con-stitution.  Therefore, we will not
address the application of the Texas Constitution to appellant=s claims.  Ramos
v. State, 934 S.W.2d 358, 362 n.5 (Tex.Cr.App.1996); Johnson v. State, 853
S.W.2d 527, 533 (Tex.Cr.App.1992), cert. den=d, 510 U.S.
852 (1993).





     [2]Southwestern Institute of Forensic Sciences.